## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS,
## HOUSTON, TEXAS

**Vamsidhar Vurimindi**,
A#096-689-764
Montgomery Processing Center
806 Hilbig Road,
Conroe, TX 77031.
                          **Petitioner**
              vs.

**Randy Tate, Warden**,
Montgomery Processing Center
806 Hilbig Road,
Conroe, TX 77031.
                                    AND
**Jennifer Ritchey, Deputy FOD**,
USICE, USDHS,
114 North 8th Street,
Philadelphia, PA 19107.
                                    AND

**Daniel A. Bible, FOD**,
USICE, USDHS,
126 Northpoint Dr,
Houston, TX 77060.
                                    AND
**William P. Barr, Attorney General**,
U.S Dep't of Justice,
950 Pennsylvania Avenue, NW
Washington, DC 20530.
                                    AND
**Chad Wolf, Acting Secretary**
U.S Dep't of Homeland Security,
Washington, DC 20530.

                          **Respondents**

**PETITION FOR A WRIT OF HABEAS CORPUS UNDER _28 U.S.C. § 2241_, BY A PERSON SUBJECT TO INDEFINITE IMMIGRATION DETENTION AND RELEASE FROM DETENTION**

United States Courts
Southern District of Texas
F I L E D

SEP 29 2020

David J. Bradley, Clerk of Court

## BACKGROUND

Petitioner, Vamsidhar Vurimindi, is a native and citizen of India; and in Year 2000 he was admitted into United States at Newark, NJ; and on

February 7, 2008, his status was adjusted to a lawful permanent resident of the United States. On September 23, 2015, USDHS/USICE charged Petitioner being removable under sections _237(a)(2)(E)(i)_[1] and _237(a)(2)(A)(iii)_[2] of _Immigration and Nationalities Act_ ("_INA_") and lodged detainer against Petitioner's release from Pennsylvania Department of Corrections, ("PADOC") custody, few days before Petitioner's scheduled release upon completion of minimum term of $2^1/_2$ Years sentence in October 2015, and harassed Petitioner by refusing to lift detainer until expiration of maximum term of 5 Years sentence on August 31, 2018.[3] Then, on December 18,

---

[1] An alien who has been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment.

[2] An alien who is convicted of an aggravated felony as defined in _INA §101(a)(43)(F)_, a crime of violence as defined in _8 U.S.C. § 16_.

[3] USDHS/USICE overreached and charged Petitioner as removable as being convicted of "crime of stalking" and "crime of violence", and issued a detainer against his release from DOC, and prolonged his incarceration thirty (30) months, despite USDHS/USICE knew that it cannot legally remove Petitioner from United States, because conviction under Pennsylvania Stalking Statute, _18 Pa.C.S.A §2709.1(a)(1)-(2)_ neither a "crime of violence" nor a "crime of stalking". Pennsylvania Board of Parole and Probation, ("PABPP"), used USDHS/USICE detainer to determine Petitioner's release pose danger to the community, and denied him parole, because USDHS/USICE notified PABPP that they cannot remove Petitioner from United States

2018, USDHS and USICE detained Petitioner at Pike County Correctional Facility, without bond. Thereafter on September 18, 2019, USICE moved Petitioner from PCCF to York County Prison, York, PA-17402. Thereafter, on October 02, 2019, USICE moved Petitioner to Adams County Detention Center, Natchez, Mississippi-39190. Thereafter, on March 12, 2020, USICE moved Petitioner to Montgomery Processing Center, 806 Hilbig Road, Conroe, TX 77031.

On July 13, 2016, Immigration Judge ("IJ") held that a conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* is a "crime of stalking" and sustained USDHS/USICE charge for removability under *INA § 237(a)(2)(E)(i)*.[4] On July 07, 2017, Board of Immigration Appeals ("BIA") issued a final order of removal of Petitioner from the United States, and on October 10, 2017, BIA administratively closed removal proceedings until Petitioner exhaust his direct appeal remedies from his April 25, 2015 conviction, and on April 9, 2019 BIA reinstated July 07, 2017 final removal order. Thereafter, Petitioner filed Petition for Review in United States Court Appeals for the Third Circuit, ("Third Circuit Court") from BIA's order reinstating July 07, 2017 final removal order, and is under Third Circuit Court's review at *Vurimindi v. Att'y Gen.*, No: No:19-1848 & 19-2904 (3d Cir. 2019)), and Third Circuit Court in the reasonably foreseeable future.

---

4    On July 13, 2016, IJ ruled that conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* is not a "crime of violence" and dismissed USDHS/USICE charge for removability under *INA § 237(a)(2)(A)(iii)*.

issued a permanent stay of removal until completion of review. In Third Circuit Court, Petitioner challenged his April 9, 2019 final removal order mainly on two grounds:

A)   Under _Taylor v. United States_, 495 U.S. 575 (1990); _Shepard v. United States_, 544 U.S. 21 (2005); _Moncrieffe v. Holder_, 569 U.S. 184 (2013); _Descamps v. United States_, 133 S. Ct. 2276 (2013) and _Mathis v. United States_, 136 S. Ct. 2243 (2016) – categorical, modified categorical and divisibility frame work, a conviction under _18 Pa.C.S.A. § 2709.1(a)(1)_ or 1_8 Pa.C.S.A. § 2709.1(a)(2)_ is not a "crime of stalking" under _INA § 237(a)(2)(E)(i)_, as defined by BIA in Matter of Sanchez-Lopez, 26 I. & N. Dec. 71 (BIA 2012). Petitioner, explicitly raised this issue in Notice of Appeal, and argued before BIA, and exhausted administrative remedies.

B)   Petitioner's conviction under _18 Pa.C.S.A. § 2709.1_ is not final, because he neither waived nor exhausted direct appeal remedy from April 25, 2014 imposition of sentence. Therefore, his conviction under conviction under _18 Pa.C.S.A. § 2709.1_ couldn't serve as the basis for removal, until it had "attained a substantial degree of finality. Such finality do not occur unless and until direct appellate review of the conviction had been exhausted or waived". _Orabi v. Att'y Gen._, 738 F.3d 535 (3d Cir.2014) (citing, _Pino v. Landon_, 349 U.S. 901 (1955)) (holding that a conviction under _INA § 101(a)(48)(A)_ does not support a charge of removability during the pendency of a direct appeal as of right). Accordingly, September 23, 2015 USDHS/USICE's Notice to Appear and charging Petitioner under _INA § 237(a)(2)(E)(i)_ as removable is premature and invalid. Concomitantly, January 18, 2017 and February 07, 2017 IJ denial of cancellation and withholding of removal respectively; and July 07, 2017 BIA dismissal of appeal; and

April 09, 2019 BIA Order reinstatement of July 07, 2017 removal order is null and void. Petitioner, explicitly argued this issue before IJ, and raised in Notice of Appeal, and argued before BIA, and exhausted administrative remedies.

Therefore, it is highly unlikely that, Petitioner will be removed from United States in the reasonably foreseeable future, and he is entitled to immediate release from detention, because conviction under overbroad Pennsylvania Stalking Statute, *18 Pa.C.S.A § 2709.1(a)(1)-(2)* is not a "crime of stalking" under *INA § 237(a)(2)(E)(i)*, (*8 U.S.C § 1227(a)(2)(E)(i)*) as defined by Board of Immigration Appeals, ("BIA") in *Matter of Sanchez-Lopez*, 26 I. & N. Dec. 71 (BIA 2012), overruled on other grounds in *Matter of Sanchez-Lopez*, 27 I. & N. Dec. 256 (BIA 2018). Petitioner would have been be released from immigration detention, but for USDHS/USICE, United States Department of Justice, ("USDOJ"), IJ and BIA unlawful interpretation of the *INA*. Moreover, Petitioner is 53 years old, suffering from multitude of health issues related to auto immune disease, degenerative joint disease, Vitamin-D deficiency, paranoid personality disorder and suffering from debilitating depression due to prolonged incarceration and his inability to support his family's needs. On June 06, 2020, Petitioner was tested positive for COVID-19 infection, and suffered from COVID-19 symptoms of chills, body aches, fever, and shortness of breath for over three weeks. Montgomery Processing Center do not practice social distancing between detainees, and numerous detainees infected with COVID-19 virus. But,

USDHS/USICE, refused to release Petitioner, despite there is no guarantee that Petitioner will not be infected again with COVID-19 virus, and if that occurs, then it will be deadly to Petitioner. This Court knew the serious harms faced by the immigrants in USDHS/USICE detention, and continued detention under these dangerous conditions is cruel and inhumane. Therefore, Petitioner, Vamsidhar Vurimindi hereby petitions this Court for a writ of habeas corpus to remedy Petitioner's unlawful detention, and to enjoin Petitioner's continued unlawful detention by the Respondents. In support of this petition and complaint for injunctive relief, Petitioner alleges as follows:

## **PARTIES**

1. Petitioner, Vamsidhar Vurimindi is currently being held in detention by the USDHS/USICE at Montgomery Processing Center, without bond since December 18, 2018. Petitioner has been continuously detained by the USDHS/USICE for over twenty-one(21) months. Moreover, on September 23, 2015, USDHS/USICE lodged a detainer against his release custody of PADOC, and for over thirty (30) months precluded him from being released until August 31, 2018, in an effort to worn-him-out and voluntarily concede his removability and suffer from deportation. See *Vurimindi v. Secretary, Department of Homeland Security*, 2018 U.S. Dist. LEXIS 132121 (W.D.P.A. 2018).

2.  Respondent Randy Tate is the Warden of Montgomery Processing Center, 806 Hilbig Road, Conroe, TX 77031. As such, Respondent is responsible for the operation of the Montgomery Processing Center, where Petitioner is currently detained. Because USDHS/USICE contracts with privately owned and operated detention centers and prisons such as Montgomery Processing Center to house immigration detainees such as Petitioner, Respondent has immediate physical custody of the Petitioner.

3.  Defendant Jennifer Ritchey is sued in her official capacity as the Deputy Field Office Director within the Commonwealth of Pennsylvania for the USICE, an office of the USDHS. Defendant Jennifer Ritchey is charged by law with the implementation and enforcement of the immigration laws, and she is the officer who has original custody over Petitioner, and transferred Petitioner to different detention centers within United States.

4.  Defendant Daniel A. Bible is sued in his official capacity as the Field Office Director within the Texas for the USICE, an office of the USDHS. Defendant Daniel A. Bible is charged by law with the implementation and enforcement of the immigration laws, and he is the officer who has the current custody over Petitioner at Montgomery Processing Center, 806 Hilbig Road, Conroe, TX 77031.

5.  Defendant William P. Barr is sued in his official capacity as the Attorney General of the United States. He has authority over the BIA and he has

authority to direct the BIA to hold bond hearings and establish bond conditions.

6. Defendant Chad Wolf is sued in his official capacity as the Acting Secretary of the Department of Homeland Security. He is the executive officer who has been given authority to manage and control the Immigration and Customs Enforcement. As such, he is the ultimate legal custodian of the Petitioner.

## JURISDICTION

7. This action arises under the Constitution of the United States, *28 U.S.C. § 2241(c)(1)*, and *INA*, *8 U.S.C. § 1101* et seq. This Court has subject matter jurisdiction under *28 U.S.C. § 2241* ("Habeas Corpus Jurisdiction"), *Art. I § 9, cl. 2 of the United States Constitution* ("Suspension Clause"), and *28 U.S.C. § 1331* ("Federal Question Jurisdiction"), and *28 U.S.C. 1361* ("Jurisdiction over actions for Mandamus") as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. See *Tran v. Mukasey*, 515 F.3d 478 (5th Cir. 2008)((The District Court had jurisdiction over this case pursuant to *28 U.S.C. § 2241*); *Cano-Miranda v. Ashcroft*, 262 F.3d 477 (5th Cir. 2001)(vacating dismissal of habeas petition in light of *INS v. St. Cyr*, 533 U.S. 289 (2001) and remanding for further proceedings); Flores-Garza v. INS, 328 F.3d 797 (5th Cir.

2003)(Court dismissed a petition for direct review of the question, but held that the district court had jurisdiction to review it through a *28 U.S.C. § 2241* petition); *Zalawadia v. Ashcroft*, 371 F.3d 292, 297 (5th Cir. 2004) (holding, in the context of a writ of habeas corpus, that a bar on re-admission following removal or deportation is a legally cognizable collateral consequence, and thus deportation did not render the petition moot); *Shokeh v. Thompson*, 369 F.3d 865, 872 vacated, 375 F.3d 351 (5th Cir. 2004)(we hold that when a bond is one of the conditions of release, that bond must be reasonable and "appropriate in the circumstances." We further hold that a bond that has the effect of preventing an immigrant's release because of inability to pay and that results in "potentially permanent" detention is presumptively unreasonable)(citing *Demore v. Kim*, 538 U.S. 510 (2003) and *Zadvydas v. Davis*, 533 U.S. 678 (2001)); See also *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208 (3d Cir. 2018)(The District Court had jurisdiction over this case pursuant to *28 U.S.C. § 2241*); See *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011)(The District Court had jurisdiction under *28 U.S.C. § 2241*), abrogated in part and on other grounds by *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018)(Attorney General "may release" an alien detained under 8 U.S.C. § 1226(a) "on bond or conditional parole". *Jennings*, 138 S. Ct. at 837); See *Leslie v. Att'y Gen.*, 678 F.3d 265 (3d Cir. 2012)(*Diop* governs not only the

detention of individuals with pending administrative removal proceedings before the IJ or BIA, but also the detention of non-citizens who have obtained a stay of removal pending judicial review of their removal orders. *Leslie*, 678 F.3d at 270); See *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)("We conclude that *28 U.S.C. § 2241* habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)("at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest."); *Clark v. Martinez*, 543 U.S. 371 (2005)(holding that *Zadvydas* applies to aliens found inadmissible as well as removable).

## **VENUE**

8.  Venue lies in the United States District Court for the Southern District of Texas, because Petitioner is currently detained in the territorial jurisdiction of this Court, at the Montgomery Processing Center, 806 Hilbig Road, Conroe, TX 77031. *28 U.S.C. § 1391*.

## **STATEMENT OF RELATED CASES AND PROCEEDINGS**

9. Petitioner's Petition for Review – *Vurimindi v. Att'y Gen.,* Case No:17-2091 (3d Cir 2017) from July 07, 2017 BIA Order affirming February 07, 2017 IJ's removal order; and Petition for Review - *Vurimindi v. Att'y Gen.,* Case No: 17-2620 (3d Cir 2017) from October 10, 2017 BIA Order administratively closing removal proceedings have been dismissed by Third Circuit Court for lack of final removal order. Petitioner's Writ of Mandamus, *Vurimindi v. Att'y Gen.,* Case No: 17-3483 (3d Cir 2017) has been transferred to United States District Court for Western District of Pennsylvania, which is consolidated with Writ of Mandamus - *Vurimindi v. Secretary, Department of Homeland Security et al*, Case No: 2:17-CV-1425 (USDC for WDPA), has been dismissed without prejudice. See *Vurimindi v. Secretary, Department of Homeland Security*, 2018 U.S. Dist. LEXIS 132121 (W.D.P.A. 2018). Petitioner's Writ of Habeas Corpus - *Vurimindi v. Craig Lowe, Warden*, Case No: 3:19-CV-0007 (USDC for MDPA) has been dismissed without prejudice. Petitioner's Writ of Habeas Corpus Petitioner's Writ of Habeas Corpus - *Vurimindi v. Craig Lowe, Warden*, Case No: 3:20-CV-00561 (USDC for MDPA), which challenged District's Courts' prior erroneous determination in Case No: 3:19-CV-0007 that Petitioner is subjected to mandatory detention under *8 U.S.C.A §§ 1226(a)* and dismissing Writ of Habeas Corpus without prejudice, is currently pending. Petitioner's Writ of Habeas Corpus Petitioner's Writ of Habeas Corpus - *Vurimindi v. Gillis et al*, Case No:

5:19-CV-00106 (USDC for SDMS), which challenged USICE's actions of detaining Petitioner without access to Pennsylvania case-law, is currently pending.

## EXHAUSTION OF REMEDIES

10. Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. After the Supreme Court decision in _Zadvydas_, the USDOJ issued regulations governing the custody of aliens ordered removed. See _8 C.F.R § 241.4_. Petitioner received final order of removal on April 9, 2019.

11. USICE first reviewed Petitioner's "90-day" custody review on July 02, 2019 pursuant to Post-Order Custody Review, ("POCR") procedures at _8 C.F.R. § 241.4_. In a letter dated July 02, 2019, USICE denied Petitioner's request for release stating that he was a danger to the community and flight risk,[5] and decided to continue Petitioner's

---

[5] Though under _Zadvydas_, Petitioner has the right to be free from indefinite detention regardless of whether USICE considers him a danger to the community or a flight risk. Petitioner contests USICE's determination of dangerousness and flight risk, because he is a Statistical Programmer & Statistician; and business and property owner in Philadelphia, earned MBA from Duke University, and concentrate on working as Statistical Programmer & Statistician and support his family, and will abide by any and all conditions placed on his release; and Petitioner have cooperated with USICE efforts to

detention pending decision by the Third Circuit Court in *Vurimindi v. Att'y Gen.*, No: 19-1848 (3d Cir 2019) USICE expected to receive a travel document for Petitioner's removal from United States, and informed, if Third Circuit Court hasn't lifted the stay with one year, then USICE schedule for a POCR. Else, if Third Circuit Court lifted stay of removal and ICE does not affect Petitioner's removal prior to "90-days" following the lifting of the stay, USICE will conduct anew POCR. *Id.*

12. On August 6, 2019, Petitioner appealed to USICE's Headquarters Post-Detention Unit ("HQPDU") from USICE denial of his release, and notified HQPDU, that it is unlikely that he will be removed from United States in the reasonably foreseeable future, because he isn't removable and IJ and BIA made grave error in sustaining USDHS/USICE charge of Petitioner's removability under *INA § 237(a)(2)(E)(i)*. However, HQPDU didn't dispose Petitioner's appeal or respond to Petitioner's numerous letters requesting to dispose his appeal. Petitioner has been continuously detained by the USDHS/USICE for over twenty-one(21) months, and it is likely, that HQPDU would continue Petitioner's custody indefinitely after a final order of removal. The custody review regulations don't provide

---

remove him from United States; and USICE obtained travel document and believes that it can remove Petitioner from United States, if and when Third Circuit Court lifts stay against Petitioner's removal, which may never happen, because he is not removable.

for appeal from a HQPDU custody review decision. See *8 C.F.R. §* *241.4(d)*.

13. Moreover, USICE refused to release Petitioner, despite he is 53 years old, suffering from multitude of health issues related to auto immune disease, degenerative joint disease, Vitamin-D deficiency, paranoid personality disorder and suffering from debilitating depression due to prolonged incarceration and his inability to support his family's needs; and contracted with COVID-19 infection at Montgomery Processing Center, 806 Hilbig Road, Conroe, TX 77031, and suffered from COVID-19 symptoms of chills, body aches, fever, and shortness of breath for over three weeks; and Montgomery Processing Center do not practice social distancing between detainees, and numerous detainees infected with COVID-19 virus; and there is no guarantee that Petitioner will not be infected again with COVID-19 virus, and if that occurs, then it will be deadly to Petitioner.

14. Petitioner exhausted available administrative remedies; and there no statutory exhaustion requirements apply to Petitioner's claim of unlawful detention.

## STATEMENT OF FACTS

### A. Petitioner isn't convicted under 8 U.S.C. § 1101(a)(48)(A):[6]

---

[6] *8 U.S.C. § 1101(a)(48)(A)*, define he term "conviction" as: "with respect to an alien, a formal judgment of guilt of the alien entered by

15. On August 17, 2012, Philadelphia District Attorney, charged Petitioner under two counts of *18 Pa.C.S.A. § 2709.1(a)(1)* (Stalking),[7] and one count of *18 Pa.C.S.A. § 5503(a)(4)* (Disorderly Conduct),[8] in *Commonwealth v. Vurimindi*, Case No: CP-51-CR-0008022-2012, Philadelphia Common Pleas Court. (See ***Exhibit-1***).

---

a court or, if adjudication of guilt has been withheld, where-- (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed. *Id.* See *Orabi v. Att'y Gen.*, 738 F.3d 535 (3d Cir.2014) (citing, *Pino v. Landon*, 349 U.S. 901 (1955))(holding that a conviction under *INA § 101(a)(48)(A)* does not support a charge of removability during the pendency of a direct appeal as of right).

[7] Engaged in course of conduct or repeatedly committed acts towards another person, including following person without proper authority, under the circumstances which demonstrated **either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress such other person**. (See ***Exhibit-1***).

[8] With intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof. Created a hazardous or physically offensive condition by an act which served no legitimate purpose of the actors, and the intent of the actor was to cause a substantial harm or serious inconvenience or the actor persisted in disorderly conduct after reasonable warning or request to desist. (See ***Exhibit-1***).

16. On February 7, 2014, at trial in _Commonwealth v. Vurimindi_, Supra, Philadelphia Assistant District Attorney Tanner Rouse, without notice, amended charges and prosecuted Petitioner under _18 Pa.C.S.A. § 2709.1(a)(1)_ and _18 Pa.C.S.A. § 2709.1(a)(2)_,[9] with either mentes reae requirement – "**intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress**". (See **_Exhibit-2_** at 1-5).

17. On February 7, 2014, in _Commonwealth v. Vurimindi_, Supra, Judge Diana Anhalt, found Petitioner guilty of two counts of stalking and one count of disorderly conduct. (See **_Exhibit-2_** at 100).

18. On April 25, 2014, in _Commonwealth v. Vurimindi_, Supra, Judge Diana Anhalt, without disclosing reasons, illegally imposed forty (40) times higher than the standard range sentence of three (3) month(s) probation, as $2^1/_2$ - 5 year(s) incarceration, followed by 5 year(s) probation. (See **_Exhibit-3_**).

19. On April 26, 2014, Petitioner mailed Notice of Appeal ("NOA"), Motion for Modification of Sentence ("MMS") and Post-Conviction Relief Act

---

[9] Engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate **either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person**.

("PCRA") Petition to Clerk of Courts from Philadelphia Detention Center.[10] On May 1, 2014, Clerk of Courts correctly docketed PCRA Petition; and incorrectly docketed MMS as "Pro Se Correspondence" and withheld docketing NOA stating, MMS is pending without disposition.

20. Petitioner filed numerous pleadings and praecipe(s) to enter adverse order against MMS, in Common Pleas Court, Superior Court and Supreme Court of Pennsylvania,[11] to compel either Common Pleas Court or Clerk of Courts to dispose pending MMS or enter adverse order against MMS or docket April 26, 2014 timely NOA, such that Petitioner can exercise his state constitutional right to appeal to challenge wrongful guilty verdict and illegal sentence.

---

[10] Under Prison Mailbox Rule Petitioner's NOA is filed on April 26, 2014, irrespective of Clerk of Courts timestamp and docket it. Moreover, Clerk of Courts received Petitioner's NOA within thirty(30) days from April 25, 2014. (**See Exhibit-4** for date-time stamps).

[11] *Vurimindi v. Court of Common Pleas Philadelphia County*, 101 A.3d 1149 (Pa.2014); *Vurimindi v. Commonwealth*, 101 A.3d 1148 (Pa.2014); *Vurimindi v. Commonwealth*, 107 A.3d 748 (Pa.2015); *Vurimindi v. Commonwealth*, 2015 Pa. LEXIS 1217 (Pa.2015); *Vurimindi v. Clerk of Common Pleas Court*, 125 A.3d 773 (Pa.2015); *Vurimindi v. Clerk of Common Pleas Court*, 127 A.3d 1291 (Pa.2015); *Vurimindi v. Anhalt*, 127 A.3d 1291 (Pa.2015); *Vurimindi v. Office of District Attorney*, 129 A.3d 1235 (Pa.2015); *Vurimindi v. Anhalt*, 130 A.3d 1282 (Pa.2016);

21. On February 6, 2016, in *Vurimindi v. Anhalt et al*, 635 Pa 62, 131 A.3d 481 (Pa.2016), Supreme Court of Pennsylvania granted mandamus action, and directed Common Pleas Court to dispose May 1, 2014 docketed PCRA Petition within 90 days, because on January 27, 2016 Common Pleas Court appointed Counsel David Rudenstien to prosecute May 1, 2014 PCRA Petition, and breakdown in operations of the court is cognizable under PCRA.

22. On June 27, 2017, in *Commonwealth v. Vurimindi*, Supra Judge Diana Anhalt entered an order denying May 1, 2014 MMS by operation of law, and allowed Petitioner to take-up direct appeal from April 25, 2014 sentence.

23. On December 14, 2018, Superior Court of Pennsylvania erroneously dismissed Petitioner' meritorious direct appeal from February 7, 2014 wrongful guilty verdict and April 25, 2014 illegal sentence at *Commonwealth v. Vurimindi*, Appeal No: 2140-EDA-2017. On December 18, 2018, Petitioner filed Application for Reargument in Superior Court; and on February 6, 2019 Superior Court denied re-argument. Immediately, on February 26, 2019, Petitioner filed Petition for Allowance of Appeal in Supreme Court of Pennsylvania, and on September 04, 2019, Supreme Court denied Petition for Allowance of Appeal; and thereafter on October 9, 2019 denied Application for Reconsideration. Thereafter, immediately, on December 02, 2019, Petitioner filed Petition for Writ of

Certiorari in Supreme Court of United States, and on February 24, 2020, Supreme Court United States denied Petition for Writ of Certiorari, rendering April 25, 2014 conviction is final. Wherefore, September 23, 2015 NTA charging Petitioner as removable under *INA § 237(a)(2)(E)(i)* is invalid.[12] Consequently, January 18, 2017 and February 7, 2017, IJ denial of cancellation of removal and denial of deferral of removal respectively; and July 7, 2017 BIA dismissal of appeal are null and void.[13]

## B. Conviction under overbroad Pennsylvania Stalking Statute, 18 Pa.C.S.A § 2709.1(a)(1)-(2) isn't a "crime of stalking" under INA § 237(a)(2)(E)(i):

24. On September 23, 2015, DHS charged Petitioner being removable under *INA § 237(a)(2)(E)(i)* and *INA § 237(a)(2)(A)(iii)*; and lodged detainer against Petitioner' release from custody of DOC. (See ***Exhibit-1***)

25. On April 6, 2016, Petitioner appeared before IJ via video, and asserted that his conviction neither final nor deportable. On April 30, 2016, Petitioner filed Application to Dismiss Charges, because April 25, 2014

---

[12] *Pereira v. Sessions*, 138 S. Ct. 2105 (2018) (A putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings isn't a "notice to appear" under § 1229(a)" and so doesn't trigger the stop-time rule). Analogously, USDHS/USICE's premature September 23, 2015 NTA, isn't "notice to appear".

[13] See *8 C.F.R. § 1003.14(a)* (stating that immigration court jurisdiction vests when the government files a valid document charging removability).

conviction isn't final, and notified IJ that SCI-Pine Grove law-library don't subscribe immigration case-law, he cannot retain private counsel and pro bono counsels aren't responding to requests for legal representation.

26. On May 11, 2016, Petitioner re-appeared before IJ via video, and notified that SCI-Pine Grove law-library don't subscribe immigration case-law, he cannot retain private counsel and pro bono counsels' didn't responded to his letters. In response, IJ said, "**Nor will they. You won't get a response from them, or if you do, you'll get a rejection. I'm obligated to give you the list, but since you're serving prison term none of the organizations on the list is willing to represent prisoners, so if that's the way you're going to try to get an attorney, forget it. It's not going to happen. Like I said, I'm obligated to give you the list, but it's basically worthless for you**". _Id._ at 8.[14] Then, IJ ignored pendency of May 1, 2014 docketed MMS and ruled that, April 25, 2014 conviction is final, and refused to continue removal proceedings until Petitioner paroled to

---

[14] See _Molinero v. Att'y Gen.,_ 523 Fed Appx 115 (3d Cir.2013)(IJ's purported explanation arguably makes this case even worse than _Leslie v. Att'y Gen.,_ 611 F.3d 171 (3d Cir.2010) because, if the IJ told Petitioner that the pro bono list is "not effective" in light of his incarceration, then the IJ effectively told him that counsel was not available. _Molinero_, 523 Fed. Appx at 119-120). This situation is worse than _Molinero_, and warrant anew removal proceedings.

immigration detainer, such that organizations on the pro bono list potentially represent Petitioner.

27. On June 10, 2016, Petitioner filed Application(s) to Dismiss Charges, because his conviction isn't final, "crime of stalking" isn't a "crime of violence" and didn't occurred in domestic setting.

28. On July 13, 2016, Petitioner re-appeared before IJ via video, and at that time IJ ruled that conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* isn't a "crime of violence" and dismiss USDHS/USICE charge for removability under *INA § 237(a)(2)(A)(iii)*; but erroneously sustained USDHS/USICE charge for removability under stating conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* is a "crime of stalking" under *INA § 237(a)(2)(E)(i)*. Subsequently, on January 18, 2017, IJ issued interim decision in support of his finding that Petitioner's conviction under *18 Pa.C.S.A. § 2709.1(a) (1)* is a "crime of stalking" under *INA § 237(a)(2)(E)(i)*. On February 7, 2017, IJ issued final removal Order.

29. On February 13, 2017, Petitioner filed NOA from February 7, 2017 IJ's final removal order to BIA, and raised several errors complained on appeal including conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* isn't "crime of stalking" under *INA § 237(a)(2)(E)(i)*; and conviction isn't final; and due process right to counsel, and right against self-incrimination is violated.

30. On June 28, 2017, Petitioner mailed Motion to Dismiss Charges to BIA, because his conviction isn't final, stating that on June 27, 2017, in *Commonwealth v. Vurimindi*, Supra Judge Diana Anhalt denied May 1, 2014 MMS and allowed to take-up direct appeal from April 25, 2014 sentence. But, BIA ignored this motion, and dismissed Petitioner's appeal and affirmed Judge Durling's February 7, 2017 removal order.[15]

31. On July 19, 2017 and August 20, 2017, Petitioner filed Motion to Reopen and Terminate Removal Proceedings, because April 25, 2014 conviction isn't final. On October 10, 2017 BIA reopened and administratively closed removal proceedings pending resolution of his direct appeal from April 25, 2014 sentence, and didn't terminate removal proceedings or lift detainer against Petitioner.

32. On October 10, 2017, Petitioner filed Motion to Reopen and Terminate Proceedings, because conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* isn't a "crime of stalking" under *INA § 237(a)(2)(E)(i)*, and BIA ignored this motion.

---

[15] Although in NOA, Petitioner explicitly stated that, under categorical and modified categorical approach conviction under 18 Pa.C.S.A. § 2709.1 don't constitute "crime of stalking" under INA § 237(a)(2)(E)(i), BIA erroneously held that, "Although the respondent challenges the finality of his conviction, he does not contest his removability. We consider the respondent's removability settled, and do not revisit that finding here".

33. On December 18, 2018, USDHS filed Motion to Recalendar, and detained Petitioner at Pike County Correctional Facility without bond hearing. On December 22, 2018, Petitioner mailed Application to Continue Administrative Closure; and on December 27, 2018, mailed Response to Motion to Recalendar; and on February 14, 2019, mailed Motion to Expedite, and listed questions directly relate to his innocence and structural errors in criminal proceedings that he intended to raise in Petition for Allowance of Appeal in Supreme Court of Pennsylvania. On 03-17-2019, Petitioner mailed Application to Terminate Removal Proceedings, because conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* isn't a "crime of stalking" under *INA § 237(a)(2)(E)(i)*.

34. On April 10, 2019, BIA reinstated July 7, 2017 removal order, stating **"Assuming respondent filed petition for allowance of appeal with Supreme Court of Pennsylvania, the respondent did not present evidence that the appeal would relate to the issue of guilt or innocence or concerns a substantive defect in criminal proceedings as required in _Matter of J.M.Acosta_, 27 I&N Dec. 420, 432 (BIA 2018)"**[16] and **"respondent did not contest his**

---

[16] Motion to Expedite lists questions directly relate to Petitioner's innocence and structural errors in criminal proceedings that he intended to raise in petition for allowance of appeal, and publicly available Superior Court docket in *Commonwealth v. Vurimindi*, No: 2140-EDA-2017, shows that on February 26, 2019, Petitioner filed Petition for Allowance of Appeal in Supreme Court of Pennsylvania.

*removability on appeal and therefore this issue was waived and*
*we did not and do not revisit this matter*".[17]

35. On April 11, 2019, Petitioner mailed Motion for Reconsideration, because his conviction isn't final, and on August 12, 2019, BIA denied Motion to Reconsider.

36. On August 03, 2019, Petitioner mailed Motion to Reopen and Terminate Removal Proceedings, because conviction under *18 Pa.C.S.A. § 2709.1(a)(1)* isn't a "crime of stalking" under *INA § 237(a)(2)(E)(i)* and Petitioner didn't waived this error. On May 04, 2020, BIA single member - Marcos Gemoets failed to recognize that BIA members - Roger Pauley and John Guendelsberger errnoneoulsy held that Petitioner did not contest his removability on appeal - and denied to reopen and terminate proceedings stating that Petitioner did not establish a substantial likelihood that the result in his case would be changed if the proceedings were reopened, despite under categorical and modified categorical approach conviction under *18 Pa.C.S.A. § 2709.1* don't constitute "crime

_____

However, BIA erroneously held that respondent didn't present evidence.

[17] Although in NOA, Petitioner explicitly stated that, under categorical and modified categorical approach conviction under 18 Pa.C.S.A. § 2709.1 don't constitute "crime of stalking" under INA § 237(a)(2)(E) (i), on 04-09-2019, BIA erroneously held that respondent didn't contest his removability on appeal.

of stalking" under *INA § 237(a)(2)(E)(i)*, and Petitioner adduced evidence that he contested his removability under *INA § 237(a)(2)(E) (i)*, in his Notice of Appeal from February 07, 2017 IJ's final removal order to BIA.[18]

---

[18] In *Matter of Sanchez-Lopez*, 26 I&N Dec. 71 (BIA 2012), BIA set forth the elements of stalking which are necessary for the crime to come within *INA § 237(a)(2)(E)(i)*: (1) conduct that was engaged in on more than a single occasion; (2) conduct which was directed at a specific individual; and (3) conduct which **_intended to cause the victim to be placed in fear of bodily injury or death_**. **_Id._** at 74.

Pennsylvania's stalking statute, *18 Pa.C.S.A. § 2709.1(a)* states that: A person commits the crime of stalking when the person either: (1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an **_intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person_**; or (2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an **_intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person_**.

A simple comparison of mens rea element of "crime of stalking" outlined in *Matter of Sanchez-Lopez*, Supra with mentes reae requirement of *18 Pa.C.S.A. § 2709.1*, it is plainly evident that mens rea element **intent _to be placed in fear of bodily injury or death_**

37. For all the reasons stated within, Petitioner's removal is not reasonably foreseeable.

## C. **USDHS/USICE Mandatory detaining of Petitioner under 8 U.S.C.A. §§ 1231(a)(6) and 1226(c) is illegal:**

38. USDHS/USICE knew that a conviction under *18 Pa.C.S.A. § 2709.1(a) (1)* is not a "crime of violence", but still charged him as removable under

---

of "crime of stalking" outlined in *Matter of Sanchez-Lopez*, Supra, only partially overlaps with first means of <u>mens rea</u> element of *§ 2709.1(a) (1)-(2)* – **intent *to place such other person in reasonable fear of bodily injury***, and left-out the "course of conduct" that committed with second means of <u>mens rea</u> element of *§ 2709.1(a)(1)-(2)* – **intent *to cause substantial emotional distress***. Therefore, the mentes *reae* element of *18 Pa.C.S.A. § 2709.1* is overbroad than the mentes *reae* element of "crime of stalking"- ***intended to cause the victim to be placed in fear of bodily injury or death*** – as defined by BIA in *Matter of Sanchez-Lopez*, 26 I. & N. Dec. 71 (BIA 2012). Accordingly, under *Taylor v. United States*, 495 U.S. 575 (1990); *Shepard v. United States*, 544 U.S. 13 (2005); *Moncrieffe v. Holder*, 569 U.S. 184 (2013); *Descamps v. United States*, 133 S. Ct. 2276 (2013) and *Mathis v. United States*, Supra - categorical and modified categorical approach conviction under <u>18 Pa.C.S.A. § 2709.1(a)(1)</u> or <u>18 Pa.C.S.A. § 2709.1(a)(2)</u> don't constitute "crime of stalking" under <u>INA § 237(a)(2)(E)(i)</u>. Concomitantly, Petitioner is not removable. See ***Appendix-A*** for complete legal argument

237(a)(2)(A)(iii)[19] of Immigration and Nationalities Act ("INA"), to bring Petitioner's removal proceedings under the ambit of "Institutional Hearing Program" to obligate IJ to complete removal proceedings as promptly as possible. Nevertheless, IJ dismissed USDHS/USICE's charge of Petitioner's removability under *INA § 237(a)(2)(A)(iii)*, rendering Petitioner was not removable under *8 U.S.C. § 1228(a) or (b)*.

39. Because, IJ dismissed USDHS/USICE's charge of Petitioner's removability under *INA § 237(a)(2)(A)(iii)*, Petitioner was not inadmissible under *8 U.S.C.A. §§ 1182(a)(2) and (a)(3)(B)*; and was not deportable by reason of having committed any offense covered in *8 U.S.C.A. §§ 1227(a)(2)(A)(i); (a)(2)(A)(ii); (A)(iii), (B), (C), or (D);(a) (4)(B)*; or *8 U.S.C.A. § 1182(a)(3)(B)*.

40. Therefore, Petitioner's is not subjected to mandatory detention under *8 U.S.C.A. §§231(a)(6) and 1226(c)*. Accordingly detention without parole, bond and Joseph's Hearing before IJ to determine legality of mandatory detention violate *8 U.S.C.A §§ 1226(a) and 1231(a)(6)* as interpreted in *Zadvydas*.

## **LEGAL FRAMEWORK FOR RELIEF SOUGHT**

### **A. Guerrero-Sanchez & Chavez-Alvarez Standard:**

---

[19] An alien who is convicted of an aggravated felony as defined in *INA § 101(a)(43)(F)*, a crime of violence as defined in *8 U.S.C. § 16.*

41. _Guerrero-Sanchez v. Warden York Cty. Prison_, 905 F.3d 208 (3d Cir. 2018), and _Chavez-Alvarez v. Warden York Cty. Prison_, 783 F.3d 469, 471 (3d Cir. 2015), abrogated in part and on other grounds by _Jennings_, 138 S. Ct. at 847, focused on three key factors to determine when detention becomes unreasonably prolonged:

### i.  _Good Faith Challenge to Removal:_

42. First, the Court relied on the presence of a good faith challenge to removal. As the Court explained, a good faith claim is one "legitimately raised" and "challenges aspects of the Government's case that present real issues, for example: a genuine factual dispute; poor legal reasoning; reliance on a contested legal theory; or the presence of a new legal issue." Id. 783 F.3d at 476. _Chavez-Alvarez_ rejected the government's argument that an individual fails to raise a good faith claim simply because that claim has been denied by the IJ and BIA. _Id_. (explaining that the analysis does not involve simply "counting wins and losses"). Again, the question is merely whether the challenge to removal has been "legitimately raised" and "presents real issues." _Id_.

### ii.  _Length of Detention:_

43. Second, reasonableness is a "function of the length of the detention". _Diop_, 656 F.3d at 232 (emphasis added). Thus, an initial period of detention without a bond hearing will become "unreasonable" at some point in time. _Id._ The Court has emphasized that both Congress and

*Demore v. Kim*, 538 U.S. 510 (2003) understood the purposes of detention to be fulfilled in the "brief" period of time necessary to complete removal proceedings—"roughly a month and a half in the vast majority of cases and about five months in the minority of cases in which an alien chooses to appeal to the BIA." *Demore*, 538 U.S. at 530; see also *Diop*, 656 F.3d at 233-34. As a result, the "constitutional case for continued detention without inquiry into its necessity becomes more and more suspect as detention continues past those thresholds." *Id.* at 234.[20]

### iii.   *Prospect of Future Proceedings:*

44. Third, courts should look to the prospect of future proceedings to determine whether detention has exceeded a reasonable period of time. Thus, on the facts of the case before it, the Court in *Chavez-Alvarez* identified as the tipping point the IJ's issuance, after nine months of proceedings, of a final order of removal denying the individual's good

---

[20] Several courts interpreting *Diop* have emphasized the importance of the *Demore* thresholds for determining whether detention has become unreasonably prolonged. See, e.g., *Bautista v. Sabol*, 862 F.Supp.2d 375, 381 (M.D.P.A.2012) (concluding that "while courts have declined to establish concrete rules for appropriate detention periods, there exists a point -somewhere around the seven-month mark - where pre-removal detention becomes universally questionable"); *Nwozuzu v. Napolitano*, 2012 U.S. Dist. LEXIS 115737 (D.N.J.2012)("any detention exceeding five months is presumptively unreasonable").

faith challenge to removal, as at that point the parties "could have reasonably predicted that his appeal would take a substantial amount of time, making his already lengthy detention considerably longer." *Chavez-Alvarez*, 783 F.3d at 478. Under this reasoning, mandatory detention likewise should be found unreasonable where, for example, a detainee will not receive a merits hearing or decision from the IJ in the near future;[21] anticipates lengthy detention during the pendency of a BIA appeal;[22] has a stay of removal pending decision on a petition for review in the court of appeals;[23] or is likely to be remanded back to

---

[21] See *Araujo-Cortes v. Shanahan*, 35 F. Supp.3d 533, 549 (S.D.N.Y. 2014) (more than six months of mandatory detention unreasonable where upcoming IJ hearing would likely not resolve petitioner's immigration status and his detention "may continue for a long time while he pursues relief from removal"); *Gordon v. Shanahan*, 2015 U.S. Dist. LEXIS 31630 (S.D.N.Y.2015)(more than eight months of mandatory detention unreasonable given lack of "any evidence that the petitioner's removal proceedings will end soon;" petitioner "had applied for relief from removal," and "the immigration judge's eventual order would be subject to review by the Board of Immigration Appeals and potentially by a court of appeals").

[22] See *Chavez-Alvarez*, 783 F.3d at 478. Notably, the Court in Chavez-Alvarez declined to rely on the mere fact that the government had sought summary affirmance by the BIA as a basis to find that the petitioner did not face prolonged detention in the future. See *Id.*

[23] See *Diouf v. Napolitano*, 634 F.3d 1081, 1091 n.13 (9th Cir. 2011) (noting that when a court "grants a stay of removal in connection with

immigration court for further proceedings.[24] Several district courts have applied a similar analysis and found comparable periods of mandatory detention to be unreasonable.[25]

### iv. *Actions by the Parties:*

45. Critically, the Court has also rejected the view that detention is only unreasonable when the government or IJ/BIA has engaged in delay or committed error. As the Court recognized in *Diop*, "individual actions by various actors in the immigration system, each of which takes only a

---

an alien's petition for review from a denial of a motion to reopen, the alien's prolonged detention becomes a near certainty").

[24] Data on immigration court backlogs are available at TRAC Immigration. In 2014, the median time from filing to final disposition of agency appeals for Second and Third Circuits was 15.7 and 7.6 months, respectively. See Admin. Office of the U.S. Courts, Judicial Business of the U.S. Courts: 2014 Annual Report of the Dir., tbl. B-4C (2014), available at: http://www.uscourts. gov/uscourts/Statistics/JudicialBusiness/2014/appendices/B04CSep14. pdf.

[25] See, e.g., *Araujo-Cortes*, 35 F.Supp.3d at 548 (finding more than six months of mandatory detention unreasonable); *Gordon*, 2015 U.S. Dist. LEXIS 31630 at *7(finding more than eight months of mandatory detention unreasonable); *Francois v. Napolitano*, 2013 U.S. Dist. LEXIS 120337 at *14 (D.N.J.2013)(finding one year of mandatory detention unreasonable); *Monestime v. Reilly*, 704 F.Supp.2d 453 (S.D.N.Y.2010) (finding that eight months of mandatory detention raised serious constitutional concerns).

reasonable amount of time to accomplish, can nevertheless result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time." _Diop_, 656 F.3d at 223. Thus, "even where the Government has handled the removal case in a reasonable way," detention pending adjudication of a good faith challenge to removal can become unreasonable and require a bond hearing. Chavez-Alvarez, 783 F.3d at 475. However, where delay or error by the government or IJ/BIA has prolonged your client's removal case, it should be especially clear that detention without a bond hearing has exceeded a reasonable period.[26] However, _Leslie_ and _Chavez-Alvarez_ make clear that detention is not reasonable merely where an individual has chosen to pursue a good faith challenge to his removal. As the Court explained in _Leslie_, "although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take." _Leslie_, 678 F.3d, at 271 (quoting _Ly v. Hansen_, 351 F.3d 263, 272 (6th Cir. 2003))."To conclude that a detainee's voluntary pursuit of such challenges renders the corresponding increase in time of detention reasonable, would 'effectively punish him for pursuing applicable legal

---

[26] See _Diop_, 656 F.3d at 234 (explaining that, in Mr.Diop's case, "the immigration judge's numerous errors, combined with the Government's failure to secure, at the earliest possible time, evidence that bore directly on the issue of whether Diop was properly detained, resulted in an unreasonable delay").

remedies'" - a result the Court has squarely rejected. Id. (quoting _Oyedeji v. Ashcroft_, 332 F. Supp. 2d 747, 753 (M.D.P.A.2004))); accord Chavez-Alvarez, 783 F.3d at 475-476. Indeed, for detention to be prolonged, Petitioner always will have chosen to pursue his case, because he is not removable from United States.

## B. **Zadvydas Standard:**

46. In _Zadvydas_, the Supreme Court held that _8 U.S.C. § 1231(a)(6)_, when "read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. A "habeas court must first ask whether the detention in question exceeds a period reasonably necessary to secure removal." _Id_. at 699. If the individual's removal "is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." _Id._ at 699-700.

47. In determining the length of a reasonable removal period, the Court adopted a "presumptively reasonable period of detention" of six months. _Id._ at 701. After six months, the government bears the burden of disproving an alien's "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." _Koljenovic v. Decker_, 2006 US Dist LEXIS 78755 (M.D.P.A. 2006)(citing, _Zadvydas_). Moreover, "for detention to remain reasonable, as the period of prior

post-removal confinement grows, what counts as the reasonably foreseeable future "conversely would have to shrink". _Zadvydas_, 533 U.S. at 701. ICE's administrative regulations also recognize that the HQPDU has a six-month period for determining whether there is a significant likelihood of an alien's removal in the reasonably foreseeable future. See _8 C.F.R. § 241.4(k)(2)(ii)_.

48. Evidence showing successful repatriation of other persons to the country at issue is not sufficient to meet the government's burden to establish that an alien petitioner will be deported within the reasonably foreseeable future. See _Thompson v. INS_, 2002 U.S. Dist. LEXIS 23936 (E.D.L.A. 2002) (government failed to show that alien's deportation to Guyana was reasonably foreseeable where the government offered historical statistics of repatriation to Guyana, but failed to show any response from Guyana on the application for travel documents that INS and the petitioner had requested). Rather, for the government to meet its burden of showing that an alien's repatriation is reasonably foreseeable, it must provide some meaningful evidence particular to the individual petitioner's case.

49. An alien who has been detained beyond the presumptive six months should be released where the government is unable to present documented confirmation that the foreign government at issue will agree to accept the particular individual in question. See _Agbada v. John_

*Ashcroft*, 2002 U.S. Dist. LEXIS 15797 (D.M.A. 2002) (court "will likely grant" habeas petition after fourteen months if ICE "is unable to present document confirmation that the Nigerian government has agreed to [petitioner's] repatriation"); *Zhou v. Farquharson*, 2001 U.S. Dist. LEXIS 18239 (D.M.A. 2001)(ordering that the writ of habeas corpus issue within 60 days, given petitioner's 13-month detention and the INS's inability to assure the court that the paperwork from China was on its way); *Abdu v. Ashcroft*, 2002 U.S. Dist. LEXIS 19050 at *7 (W.D.W.A. 2002) (government's failure to offer specific information regarding how or when it expected to obtain the necessary documentation or cooperation from the foreign government indicated that there was no significant likelihood of petitioner's removal in the reasonably foreseeable future).

## CLAIMS FOR RELIEF

## COUNT ONE - STATUTORY VIOLATION

50. Petitioner re-alleges and incorporates by reference paragraphs 1 through 49 above.

51. Petitioner's conviction did not reach sufficient degree of finality, and therefore USDHS prosecuting Petitioner as removable violates *8 U.S.C. § 1101(a)(48)(A)*, as interpreted in *Orabi v. Att'y Gen.*, 738 F.3d 535 (3d Cir.2014).

52. Petitioner's conviction under <u>18 Pa.C.S.A. § 2709.1(a)(1)</u> or <u>18 Pa.C.S.A. § 2709.1(a)(2)</u> do not constitute "crime of stalking" under <u>INA § 237(a)(2)(E)(i)</u>, under categorical and modified categorical analysis frame-work as directed in <u>*Taylor v. United States*</u>, 495 U.S. 575 (1990); <u>*Shepard v. United States*</u>, 544 U.S. 13 (2005); <u>*Moncrieffe v. Holder*</u>, 569 U.S. 184 (2013); <u>*Descamps v. United States*</u>, 133 S. Ct. 2276 (2013) and <u>*Mathis v. United States*</u>, 136 S. Ct. 2243 (2016). Moreover, in <u>*United States v. Gonzalez*</u>, 905 F.3d 165 (3d Cir.2018)(quoting, <u>*United States v. Yeaman*</u>, 194 F.3d 442, n.6 (3d Cir.1999); <u>*United States v. Edmonds*</u>, 80 F.3d 810 (3d Cir.1996); <u>*United States v. Shrader*</u>, 675 F.3d 300 (4th Cir.2012);[27] <u>*United States v. Osinger*</u>, 753 F.3d 939 (9th Cir.2014)[28]), Third Circuit Court held that <u>mentes reae</u> requirement in federal Stalking Statute, "***intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress***", constitutes alternate "means" as opposed to alternate elements of the offense, for which defendant has no right to insist on a jury instruction requiring unanimous agreement on the "means" by

---

[27] Fourth Circuit, has declined to parse the different <u>mentes reae</u> of federal Stalking Statute and observed that "it is an element of the crime that the defendant have intended harm to a particular victim".

[28] Ninth Circuit has also treated the <u>mentes reae</u> requirement of federal Stalking Statute as a single element in conducting its analysis of the statute.

which <u>mens rea</u> element is satisfied. *Gonzalez*, 905 F.3d at 183-87. Consequently, <u>mentes reae</u> requirement in Pennsylvania Stalking Statute is indivisible, and overbroad than the <u>mentes *reae*</u> element of "crime of stalking"- ***intended to cause the victim to be placed in fear of bodily injury or death*** – as defined by BIA in *Matter of Sanchez-Lopez,* 26 I. & N. Dec. 71 (BIA 2012). Therefore under *INA § 237(a)(2)(E)(i)*, Petitioner is not removable, and DHS continued prosecution of Petitioner as removable violates *INA § 237(a)(2)(E)(i)*.

53. Petitioner's continued detention by the Respondents violates *8 U.S.C. § 1231(a)(6)*, as interpreted in *Guerrero-Sanchez*, *Chavez-Alvarez* and *Zadvydas*. But, USDHS/USICE overreached and charged Petitioner as removable under being convicted of "crime of stalking" and "crime of violence"; and precluded him from being paroled at completion of his minimum term of sentence in October 2015, and prolong his incarceration for another thirty (30) months and then detained him for the last twenty-one (21) months, despite USDHS/USICE knew that it cannot legally remove Petitioner from United States. For the reasons outlined above in paragraphs 1 to 45, Petitioner's removal from United States is not reasonably foreseeable. The Supreme Court held in *Guerrero-Sanchez*, *Chavez-Alvarez* and *Zadvydas* that the continued detention of someone after six months where deportation is not

reasonably foreseeable is unreasonable and in violation of *8 U.S.C. § 1231(a)*. 533 U.S. at 701.

## COUNT TWO - SUBSTANTIVE DUE PROCESS VIOLATION

54. Petitioner re-alleges and incorporates by reference paragraphs 1 through 53 above.

55. Petitioner's continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint. See, e.g., *Tam v. INS*, 14 F.Supp.2d 1184 (E.D.C.A. 1998)(aliens retain substantive due process rights). The Due Process Clause requires that the deprivation of petitioner's liberty be narrowly tailored to serve a compelling government interest. See *Reno v. Flores*, 507 U.S. 292, 301-02 (1993). While the respondents would have a compelling government interest in detaining petitioner in order to effect his deportation, that interest does not exist if Petitioner cannot be deported. The Supreme Court in *Zadvydas* thus interpreted *8 U.S.C. § 1231(a)* to allow continued detention only for a period reasonably necessary to secure the alien's removal because any other reading would go beyond the government's articulated interest -- to effect the alien's removal. See *Kay v. Reno*, 94 F.Supp.2d 546, 551 (M.D.P.A. 2000)(granting writ of habeas corpus because petitioner's substantive due process rights were violated, and noting that "If deportation can

never occur, the government's primary legitimate purpose in detention-executing removal-is nonsensical").

## **COUNT THREE - PROCEDURAL DUE PROCESS VIOLATION**

56. Petitioner re-alleges and incorporates by reference paragraphs 1 through 55 above.

57. Under the Due Process Clause of the United States Constitution, an alien is entitled to a timely and meaningful opportunity to demonstrate that he should not be detained. The Petitioner in this case has been denied that opportunity as there is no administrative mechanism in place for the Petitioner to demand a decision, ensure that a decision will ever be made, or appeal a custody decision that violates *Guerrero-Sanchez*, *Chavez-Alvarez* and *Zadvydas*.

## **COUNT FOUR - DUE PROCESS AND EIGHTH AMENDMENT VIOLATION**

58. Petitioner re-alleges and incorporates by reference paragraphs 1 through 57 above.

59. Petitioner is 53 years old, suffering from multitude of health issues related to auto immune disease, degenerative joint disease, Vitamin-D deficiency, paranoid personality disorder and suffering from debilitating depression due to prolonged incarceration and his inability to support his family's needs.

60. On June 06, 2020, Petitioner was tested positive for COVID-19 infection, and suffered from COVID-19 symptoms of chills, body aches, fever, and shortness of breath for over three weeks.

61. Moreover, in September 2020, Montgomery Processing Center brings-in 160 new detainees, and many of them are contracted with COVID-19 infection, and suffering from its symptoms. Montgomery Processing Center do not practice social distancing between detainees, and numerous detainees infected with COVID-19 virus. This Court knew the serious harms faced by the immigrants in USDHS/USICE detention at Montgomery Processing Center. (See *Barrera v. Wolf*, Case No: 4:20-CV-1241, USDC for SDTX (2020)). Nevertheless, USDHS/USICE, refused to release Petitioner, despite there is no guarantee that Petitioner will not be infected again with COVID-19 virus, and if that occurs, then it will be deadly to Petitioner and continued detention under these dangerous conditions is cruel and inhumane.

62. Under the Eighth Amendment and Due Process Clause of the United States Constitution, Petitioner's continued detention under these dangerous conditions constitute cruel and unusual punishment. See *Sheperd v. Dallas Cty*, 591 F.3d 445 (5th Cir 2009)(When the State affirmatively exercise of its power and restrains an individual's liberty that it renders him unable to care for himself and at the same-time

State fails to provide for his basic human needs, then State's action violates Eighth Amendment and Due Process Clause).

## **PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that this Court grant the following relief:

1. Assume jurisdiction over this matter;

2. Grant Petitioner a writ of habeas corpus directing the Respondents to immediately release the Petitioner from custody, under reasonable conditions of supervision;

3. Issue a declaratory judgment stating that Petitioner is eligible to be released on bond and that DHS, DOJ, IJ and BIA's interpretation of the INA is arbitrary and capricious, an erroneous interpretation of law, and violates the Eighth Amendment and the Due Process Clause of the Constitution of the United States;

4. Issue a declaratory judgment stating that Petitioner is a lawful permanent resident of the United States entitled to the protection of the Due Process Clause and the Eighth Amendment of the Constitution;

5. In the alternative that a bond hearing be held immediately before an immigration judge; and

6. Grant any other and further relief which this Court deems just, appropriate and proper, including costs, expenses and reasonable attorney fees.

Date: September 22, 2020

Respectfully Submitted,

*Vamsidhar Vurimindi*

Vamsidhar Vurimindi
Petitioner, Pro Se
A#096-689-764
Montgomery Processing Center
806 Hilbig Road,
Conroe, TX 77031.

## **VERIFICATION**

I, Vamsidhar Vurimindi verify the statements and information contained in the foregoing Petition is true and correct to the best of my knowledge and belief. I understand false statements are subject to penalty under *28 U.S.C. § 1746*, relating to Unsworn declarations under penalty of perjury.

Date: September 22, 2020          Respectfully Submitted,

*Vamsidhar Vurimindi*
Vamsidhar Vurimindi
Petitioner, Pro Se
A#096-689-764
Montgomery Processing Center
806 Hilbig Road,
Conroe, TX 77031.

## **CERTIFICATE OF SERVICE**

I, Vamsidhar Vurimindi certify that a true and correct copy of foregoing Petition by USPS First Class Mail to the following:

1. Office of the Clerk, USDC for the SDTX, Bob Casey United States Courthouse, 515 Rusk Street, Room 5300, PO Box 61010, Houston TX 77002-2600.

Date: September 22, 2020          Respectfully Submitted,

*Vamsidhar Vurimindi*
Vamsidhar Vurimindi,
Petitioner, Pro Se
A#096-689-764
Montgomery Processing Center
806 Hilbig Road,
Conroe, TX 77031.

Exhibit-1

Commonwealth of Pennsylvania

Court of Common Pleas

County of Philadelphia

1st Judicial District



**INFORMATION**

**Commonwealth of Pennsylvania**

**v.**

**Vamsidhar Vurimindi**

**Docket No: CP-51-CR-0008022-2012**

The Attorney for the Commonwealth of Philadelphia County by this information charges that in the County of Philadelphia, Pennsylvania, Vamsidhar Vurimindi:

**COUNT 1:**                    **Stalking - Repeatedly Commit Acts To Cause Fear - (M1)**
Offense Date: 2/4/12          **18 § 2709.1 §§ A1**

Engaged in a course of conduct, or repeatedly committed acts toward another person, including following the person without proper authority, under circumstances which demonstrated either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person;

**COUNT 2:**                    **Stalking - Repeatedly Commit Acts To Cause Fear - (M1)**
Offense Date: 2/4/12          **18 § 2709.1 §§ A1**

Engaged in a course of conduct, or repeatedly committed acts toward another person, including following the person without proper authority, under circumstances which demonstrated either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person;

**COUNT 3:**                    **Disorder Conduct Hazardous/Physi Off - (M3)**
Offense Date: 2/4/12          **18 § 5503 §§ A4**

With intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, created a hazardous or physically offensive condition by an act which served no legitimate purpose of the actor, and the intent of the actor was to cause substantial harm or serious inconvenience, or the actor persisted in disorderly conduct after reasonable warning or request to desist

Citation of Statute
and Section:          1    18 § 2709.1 §§ A1 (M1)
                      2    18 § 2709.1 §§ A1 (M1)
                      3    18 § 5503 §§ A4 (M3)

All of which is against the Act of Assembly and the peace and dignity of the Commonwealth.

**Philadelphia County District Attorney**
**R Seth Williams**

CP-51-CR-0008022-2012 Comm. v. Vurimindi, Vamsidhar
Information Filed

2730025081

002526

Exhibit-2

# First Judicial District of Pennsylvania

*51CR00080222012*
*Vamsidhar Vurimindi*

*Trial (Waiver) Volume 1*
*February 07, 2014*



*First Judicial District of Pennsylvania*
*100 South Broad Street, Second Floor*
*Philadelphia, PA 19110*
*(215) 683-8000   FAX:(215) 683-8005*

*Original File 20714vv.txt, 100 Pages*
*CRS Catalog IF: 16100053*

Page 1

[1]       IN THE COURT OF COMMON PLEAS
         FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
[2]          CRIMINAL TRIAL DIVISION
               - - -
[3]
COMMONWEALTH     :
[4]              :
   vs.           :
[5]              :
   VAMSIDHAR VURIMINDI : CP-51-CR-0008022-2012
[6]
[7]              - - -

         FEBRUARY 7, 2014
[8]
[9]              - - -

         Courtroom 801
[10]      Criminal Justice Center
       Philadelphia, Pennsylvania
[11]
[12]             - - -
     BEFORE: THE HONORABLE DIANA ANHALT, J.
[13]
[14]             - - -
[15]
[16]

[17]           - - -

       WAIVER TRIAL
[18]
[19]             - - -
[20]
[21]
[22]
[23]
[24]
[25]

Page 2

[1] APPEARANCES:
[2]
   TYLER ROUSE, ESQUIRE
[3] Assistant District Attorney
   For the Commonwealth
[4]
   MR. GAMBONE, ESQUIRE
[5] Attorney for the Defendant
[6]
[7]
[8]
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 3

[1]            INDEX
[2]
[3]
COMMONWEALTH'S EVIDENCE
[4]
WITNESS        DR  CR  RDR  RCR
[5]
Allison Borowski   4  44
[6]
 Anthony Vizzachero   50  53  56  57
[7]
Nick Palmer       58
[8]
 Nicole Spadea     97  98
[9]
[10]            - - -
DEFENDANT'S EVIDENCE
[11]
WITNESS        DR  CR  RDR  RCR
[12]
Vamsidhar Vurimindi   87  94
[13]
[14]
[15]            - - -
[16]      EXHIBITS
[17]
NUMBER   DESCRIPTION   PAGE
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

Page 4

[1]        THE COURT: Sequester witnesses.
[2]        MR. ROUSE: They are sequestered.
[3]        THE CRIER: State your full name for
[4] the record.
[5]        THE WITNESS:. Allison Borowski.
[6]     Witness, sworn.
[7]               - - -
[8]        DIRECT EXAMINATION
[9]               - - -
[10] BY MR. ROUSE:
[11] Q.   Fair to say you live out of state now?
[12] A.   That's correct.
[13]        THE COURT: Are we good with bill of
[14] information?
[15]        MR. ROUSE: They've been amended
[16] several times.
[17]     Let me put it on the record.
[18]     Way back in MC, Mr. Diamondstein agreed
[19] we were going to do this as one transcript
[20] essentially. It is two counts of stalking,
[21] harassment. One applies to Ms. Borowski. One
[22] applies to Rejani Pattinson. She's also here,
[23] she'll be testifying. She's the other complainant
[24] in this. And those are the charges.
[25]        MR. GAMBONE: That's correct, Your

**Page 5**

[1] Honor.

[2] THE COURT: 2709.1 subsection A1.

[3] Because it's very specific and I want to make sure

[4] I'm looking at the right stats.

[5] MR. ROUSE: Your Honor, I believe it

[6] should be A1. The only difference is A1 includes

[7] about following another person without permission.

[8] Frankly, I think A1 and A2, they both apply in this

[9] case. However, A2 is more broad. This isn't

[10] specifically related.

[11] THE COURT: So you want to go with 1

[12] and 2?

[13] MR. ROUSE: Yes. Obviously, it's one

[14] count but it would be 1 and 2.

[15] They are M1s.

[16] THE WITNESS: I live out of state

[17] during the week. And then in Philadelphia on the

[18] weekend.

[19] BY MR. ROUSE:

[20] Q. Are you still at the residence you held for a

[21] number of years?

[22] A. Yes.

[23] Q. What is that address?

[24] A. 313 Arch Street.

[25] Q. In living there have you -- do you know

**Page 6**

[1] anyone that you see here in the courtroom?

[2] A. Yes, the defendant.

[3] Q. Could you point to him?

[4] MR. ROUSE: Indicating Mr. Vurimindi.

[5] BY MR. ROUSE:

[6] Q. I'll show you a bunch of things. If you

[7] would begin by detailing your relationship with Mr.

[8] Vurimindi from the beginning with Her Honor.

[9] A. I moved to Philadelphia in June 2009 for my

[10] residency. He -- I'd like to explain, if that's

[11] okay the layout of the floor on which we lived.

[12] There is a long hallway leading down from the

[13] elevator. At the end of the hallway you turn right.

[14] My apartment is on one side. The other complaining

[15] witness is on the other side. At the end is the

[16] defendant's apartment.

[17] THE COURT: You go down the long

[18] hallway. Right to get to your apartment?

[19] THE WITNESS: You turn right and the

[20] three apartments are all down that hallway. My wall

[21] is completely shared with the defendant's wall.

[22] THE COURT: So he's in between?

[23] THE WITNESS: Hers is not shared.

[24] Mine is.

[25] So I moved to Philadelphia. I met him

**Page 7**

[1] and his wife within the first few days of me moving

[2] in. They were very nice. You know, casual

[3] chatting. That's about it. He seemed to have a

[4] good rapport. So good that in December when I had

[5] first moved there, that first year in 2009, I had to

[6] go up to New York unexpectedly. I had a pet rabbit

[7] in my apartment and I asked him and his wife to feed

[8] him overnight. I thought really nothing of it.

[9] I came back and noticed that some towels

[10] had been folded in my apartment that had not been

[11] folded before, and thought it was strange, didn't do

[12] anything about it. I got the keys. Fine.

[13] In January I received an email from the

[14] defendant via Facebook which basically said you're a

[15] great neighbor. I'm very happy to have had you

[16] here. Something along those lines.

[17] BY MR. ROUSE:

[18] Q. Showing you C-1.

[19] MR. GAMBONE: Your Honor, I'm going to

[20] object to that.

[21] MR. ROUSE: Everything has been shared

[22] with defense counsel.

[23] MR. GAMBONE: I'm not going to object

[24] that it hasn't been shared. I'm going to object to

[25] the fact -- it's a Facebook post, Your Honor. While

**Page 8**

[1] the witness testified it was received from my

[2] client, there is no evidence that the Commonwealth

[3] can present as far as --

[4] THE WITNESS: I can pull it up.

[5] MR. ROUSE: The name Vamsidhar and

[6] signature and his phone number.

[7] MR. GAMBONE: That's fine, but --

[8] MR. ROUSE: Indication "I hope this

[9] email may provide some comfort about your neighbor

[10] for purposes of Vurimindi."

[11] THE COURT: The DA is allowed to try

[12] to authenticate the document.

[13] MR. GAMBONE: Very well, Your Honor.

[14] THE COURT: If there is enough

[15] evidence by a preponderance of the evidence that it

[16] can be authenticated, then it will be admitted.

[17] MR. GAMBONE: Very well, Your Honor.

[18] BY MR. ROUSE:

[19] Q. Take a look at C-1. Is that the

[20] correspondence you're referring to?

[21] A. Yes.

[22] Q. And you said you received that on a Facebook

[23] account?

[24] A. Yes.

[25] Q. What was the Facebook account you received it

Page 97

[1]            - - -
[2]            THE COURT:  Any other evidence?
[3]            MR. GAMBONE:  Stipulation by and
[4] between counsel as to my client's good character.
[5]            THE COURT:  Character traits for law
[6] abiding.
[7]            MR. GAMBONE:  Peaceful, law abiding
[8] and honest.
[9]            MR. ROUSE:  Your Honor, I have
[10] rebuttal.
[11]            THE COURT:  Anything else?
[12]            MR. GAMBONE:  That's I have, Your
[13] Honor.  I rest.
[14]            - - -
[15]            THE CRIER:  State your full name for
[16] the record.
[17]            THE WITNESS.  Nicole Spadea.
[18]            Witness, sworn.
[19]            - - -
[20]            DIRECT EXAMINATION
[21]            - - -
[22] BY MR. ROUSE:
[23] Q.    Do you know the defendant?
[24] A.    No.
[25] Q.    How are you employed?

Page 98

[1] A.    I work for LDR property group.
[2] Q.    Do they own?
[3] A.    They are property management company for The
[4] Factory.
[5] Q.    In your capacity as property manager, are you
[6] familiar with Mr. Vurimindi's reputation?
[7] A.    Yes.
[8] Q.    Would you say his reputation is for honestly
[9] truthful and law abiding?
[10] A.    No.
[11] Q.    Who have you spoken with about his
[12] reputation?
[13] A.    I've spoke to my boss.  I've spoken to
[14] various tenants in the building.  Ant anybody who
[15] ever had contact with him that I had contact with
[16] told me of Vamsidar.
[17]            MR. ROUSE:  Nothing further.
[18]            - - -
[19]            CROSS-EXAMINATION
[20]            - - -
[21] BY MR. GAMBONE:
[22] Q.    The contact you've had with regard to Mr.
[23] Vurimindi's reputation, you said with tenants in the
[24] building?
[25] A.    Residents.

Page 99

[1] Q.    Condo association?
[2] A.    Correct.
[3] Q.    With regards to, contact this is just contact
[4] that you had in passing?
[5] A.    Yeah.
[6] Q.    You just passed in the hallway or something
[7] like that?
[8] A.    Hallway, condo association meetings.  I met
[9] people in the office if they come in.
[10] Q.    Aside from that, you heard nothing else about
[11] Mr. Vurimindi, is that fair?
[12] A.    I've been contacted by Mr. Vurimindi's
[13] attorney a couple times.  That was for a civil case.
[14] Q.    Again, those people that you spoke to, maybe
[15] just one time?
[16] A.    I couldn't tell you.
[17]            MR. GAMBONE:  That's all I have.
[18]            (Witness excused.)
[19]            - - -
[20]            THE COURT:  I take copious notes.  I
[21] want to hear you argue the law and the facts as you
[22] see they fit to the law.  But I want to make sure
[23] you know I do really take good notes.
[24]            MR. GAMBONE:  Thank you, Your Honor.
[25]            (Argument heard.)

Page 100

[1]            THE COURT:  Mr. Vurimindi, I find you
[2] guilty hof the four charges that the Commonwealth
[3] has charged against beyond a reasonable doubt.
[4]            I don't remember what the bail situation
[5] is, but the bail is revoked.  We are going to order
[6] a mental health evaluation.  Order a PSI.
[7]            What else can we order?  I want to make
[8] sure I have a full.
[9]            MR. ROUSE:  I believe that's it.  In
[10] addition to that, I have reports I can get to you,
[11] backdated reports.
[12]            THE COURT:  Fair enough.
[13]            MR. ROUSE:  No disorderly conduct, I
[14] agree to that.
[15]            (Proceedings concluded.)
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

# Exhibit-3

**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CRIMINAL**
**OFFICE OF JUDICIAL RECORDS**
Juanita Kidd Stout Center for Criminal Justice
1301 Filbert Street, Room 310
Philadelphia, PA 19107
215-683-7700
(215) 683-7713 (Fax)



**Eric Feder**
Deputy Court Administrator
Director, Office of Judicial Records

**Marc Gaillard, Deputy Director**
**Elaine Q. Ratliff, Deputy Director**

COMMONWEALTH                    :    ☐ MUNICIPAL COURT OF PHILADELPHIA

VS.                              :    ☑ TRIAL DIVISION—CRIMINAL

Vamsidhar Vurimindi              :    DOCKET # CP-51-CR-0008022-2012

*I CERTIFY* the foregoing to be a true and correct copy of the full, entire, and complete Record in the case above stated, as the same now remains of Record in this Office.

*IN TESTIMONY WHEREOF*, I have hereunto set my hand and affixed the seal of the said Court this 12th day of May , A.D. 2015 .

Elaine Q. Ratliff, Deputy Director



*file*

Commonwealth of Pennsylvania
v.
**Vamsidhar Vurimindi**

IN THE COURT OF COMMON PLEAS OF
PHILADELPHIA COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

DOCKET NO:           CP-51-CR-0008022-2012
DATE OF ARREST: 02/04/2012
OTN:                        N 787303-6
SID:                         395-15-43-1
DOB:                        07/25/1969
PID:                         1118588

# ORDER OF SENTENCE

AND NOW, this 25th day of April, 2014, the defendant having been convicted in the above-captioned

case is hereby sentenced by this Court as follows:

**Count 1 - 18 § 2709.1 §§ A1 - Stalking - Repeatedly Commit Acts To Cause Fear (M1)**
To be confined for a minimum period of 15 Month(s) and a maximum period of 30 Month(s) at State Correctional
Institution.
The following conditions are imposed:
Credit for time served: Credit to be calculated by the Phila. Prison System
Stay Away Order: To stay away from victim(s).
This sentence shall commence on 04/25/2014.
To be placed on Probation - State (PBPP) Regular Probation - for a minimum period of 30 Month(s) and a maximum
period of 30 Month(s) to be supervised by MENTAL HEALTH PROBATION.
The following conditions are imposed:
Stay Away Order: To stay away from victim(s).
Supervision - Supervision Under Mental Health Unit: Defendant to be supervised under the Mental Health Unit.

**Count 2 - 18 § 2709.1 §§ A1 - Stalking - Repeatedly Commit Acts To Cause Fear (M1)**
To be confined for a minimum period of 15 Month(s) and a maximum period of 30 Month(s) at State Correctional
Institution.
The following conditions are imposed:
Stay Away Order: To stay away from victim(s).
To be placed on Probation - State (PBPP) Regular Probation - for a minimum period of 30 Month(s) and a maximum
period of 30 Month(s) to be supervised by MENTAL HEALTH PROBATION.
The following conditions are imposed:
Stay Away Order: To stay away from victim(s).
Supervision - Supervision Under Mental Health Unit: Defendant to be supervised under the Mental Health Unit.

**Count 3 - 18 § 5503 §§ A4 - Disorder Conduct Hazardous/Physi Off (M3)**
A determination of guilty without further penalty.

CP-51-CR-0008022-2012 Comm. v. Vurimindi, Vamsidhar
Order - Sentence/Penalty Imposed

*Diana L. Anhalt*

7143028451

Printed: 04/25/2014 10:28:23AM

002523

Commonwealth of Pennsylvania
v.
Vamsidhar Vurimindi

Order of Sentence

Docket No: CP-51-CR-0008022-2012

---

LINKED SENTENCES:
Link 3
   Link 2 is Consecutive to
   Link 1
Link 1
   CP-51-CR-0008022-2012 – Seq. No. 2 (18§ 2709.1 §§ A1) - Confinement is Consecutive to
   CP-51-CR-0008022-2012 – Seq. No. 1 (18§ 2709.1 §§ A1) - Confinement
Link 2
   CP-51-CR-0008022-2012 – Seq. No. 2 (18§ 2709.1 §§ A1) - Probation is Consecutive to
   CP-51-CR-0008022-2012 – Seq. No. 1 (18§ 2709.1 §§ A1) - Probation

---

The defendant shall pay the following:

| | Fines | Costs | Restitution | Crime Victim's Compensation Fund - | Total Due |
|---|---|---|---|---|---|
| Amount: | $0.00 | $478.00 | $0.00 | $60.00 | $538.00 |
| Balance Due: | $0.00 | $365.50 | $0.00 | $60.00 | $425.50 |

ADA:Tanner Rouse   Defense Atty: Alfonso Gambone   Steno: Mary Dalasandra   Clerk:L.Fischer   Hon.Anhalt

BY THE COURT:

*Diana L. Anhalt*

Judge Diana L. Anhalt

# APPENDIX-A

### 1. *A Conviction under 18 Pa.C.S.A. § 2709.1 Isn't "Crime of Stalking" Under INA § 237(a)(2)(E)(i):*

On December 9, 2002, Pennsylvania Legislature amended, *18 Pa.C.S.A § 2709* (Harassment and Stalking), to *18 Pa.C.S.A § 2709* (Harassment) and *18 Pa.C.S.A § 2709.1* (Stalking). See *18 Pa.C.S.A §§ 2709, 2709.1* (West 2000 & 2013 Supp.). Until this amendment, *18 Pa.C.S.A § 2709(a)* dealt with Harassment, and *18 Pa.C.S.A § 2709(b)* dealt with Stalking; and Pennsylvania case law alluded that stalking under *18 Pa.C.S.A 2709(b)(1)* is with intent to place in fear of bodily harm, and stalking under *18 Pa.C.S.A 2709(b)(2)* is with intent to cause emotional distress, and Courts have specifically instructed juries on particular mens rea requirement.[1] Amended *18 Pa.C.S.A § 2709.1* (under which Petitioner was convicted) reads as:

    (a) A person commits the crime of stalking when the person either:

> (1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in **reasonable fear of bodily injury or to cause substantial emotional distress to such other person;** or

---

[1] See *Commonwealth v. Davis*, 737 A.2d 792 (Pa Super 1999), court provided jury instruction concerning a stalking charge under *18 Pa.C.S.A § 2709(b)* as follows: *"You have yourselves heard the testimony in connection with the Scott Street incident. It is up to you to determine whether or not the events on Scott Street happened and how they happened. And in [the] event you should find that they happened, then to determine whether or not they fall into the course of conduct which it [sic] was intended to cause emotional distress or not.".*

(2)   engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in **reasonable fear of bodily injury or to cause substantial emotional distress** to such other person. *Id*.

Therefore *18 Pa.C.S.A. § 2709.1* elements are:

1. To engage
   a. Course of conduct, defined as pattern of conduct composed of two or more acts, evidencing a continuity of purpose; or
   b. Repeatedly commits acts toward another person, including following the person without proper authority, under circumstances; or
   c. Repeatedly communicates to another person; and
2. With an intent
   a. to place such other person in reasonable fear of bodily injury; or
   b. to cause substantial emotional distress such other person. *Id*.


But, Pennsylvania legislature envisioned a third element when it enacted *18 Pa.C.S.A § 2709(b)*, that the victim was actually placed in fear by the defendant's actions. Therefore, in earlier versions of the Pennsylvania Suggested Standard Criminal Jury Instructions, the subcommittee has suggested that a third element of *18 Pa.C.S.A. § 2709.1* required that Commonwealth prove that the victim was actually placed in fear by the defendant's actions. In part the subcommittee had relied upon legislative history for this judgment. See *Pennsylvania House of Representatives Legislative Journal*, February 2, 1993, pages 102-103, and February 10, 1993, page 312. In the appellate courts' consideration of *18*

*Pa.C.S.A. § 2709(b)*, no such element has appeared and, indeed, none appears in the statute itself. See *Commonwealth v. D'Collanfield*, 805 A.2d 1244 (Pa Super 2002); *Commonwealth v. Reese,* 725 A.2d 190 (Pa Super 1999). Thus, subcommittee deleted this third element in later versions of suggested standard criminal jury instructions. See *PA-JICRIM 15.2709.1 (2016), Subcommittee Note*.

The criminal information (charging document) shows that, on August 17, 2012, in Count 1 and 2: Stalking – Repeatedly Commit Acts To Cause Fear - (M1) under *18 Pa. C.S.A. § 2709.1(a)(1)*, Commonwealth charged Petitioner that he, "Engaged in a course of conduct, or repeatedly committed acts towards another person, including following the person without proper authority, under circumstances which demonstrated either intent to place such other person in **reasonable fear of bodily injury** or **to cause substantial emotional distress** to such other person." (See ***Exhibit-1***). On February 07, 2014, at trial, after complaining witness sworn in, trial-court and Commonwealth together ambushed Petitioner by constructively amending August 17, 2012 criminal information of two counts of stalking under *18 Pa.C.S.A. § 2709.1(a)(1)*, to include both subsections of *2709.1(a)(1) and (2)*, in each count of stalking charge, stating subsection *2709.1(a)(2)* is more broader than subsection *2709.1(a)(1)*.[2] (See

---

2

| THE COURT: | Sequester witnesses. |
|---|---|
| MR. ROUSE: | They are sequestered. |
| THE CRIER: | State your full name for the record |
| THE WITNESS: | Allison Borowski. Witness, Sworn. |
| | DIRECT EXAMINATION |

BY MR. ROUSE:

***Exhibit-2*** at 1-5). Therefore, the relevant charging document is February 07, 2014 constructively amended criminal information to prosecute Petitioner under all (two) subsections *(2709.1(a)(1) and (2))* of *18 Pa.C.S.A. § 2709.1* with either intent to place such other person in **reasonable fear of bodily injury** or **to cause substantial emotional distress** to such other person - in two counts of stalking. See *Evanson v. Att'y Gen.*, 550 F.3d 284 (3d Cir. 2008)(criminal complaint isn't the charging document, because it is superseded by the criminal information). On February 07, 2014, at conclusion of trail, without specifying

|  |  |
|---|---|
|  | Q. Fair to say you live out of state now? |
|  | A. That's Correct. |
| THE COURT: | Are we good with bill of information? |
| MR. ROUSE: | They have been amended several times. Let me put it on record. Way back in MC, Mr. Diamondstein agreed we were going to do this as one transcript essentially. It is two counts of stalking, harassment. One applies to Ms. Borowski. One applies to Rejani Pattinson. She is also here, she'll be testifying. She's the other complainant in this. And those are the charges. |
| MR. GAMBONE: | That's Correct, Your Honor. |
| THE COURT: | 2709.1 subsection A1. Because it's very specific and I want to make sure I'm looking at the right stats. |
| MR. ROUSE: | Your Honor, I believe it should be A1. The only difference  is A1 includes about following another person without permission. Frankly, I think A1 and A2, they both apply in this case. However, A2 is more broad. This isn't specifically related. |
| THE COURT: | So you want to with 1 and 2? |
| MR. ROUSE: | Yes. Obviously, it's one count but it would be 1 and 2. They are M1s. (See ***Exhibit-2*** at 1-5). |

under which *mentes reae* requirement Petitioner was found guilty, judge stated that "*I find you guilty hof four charges that the Commonwealth has charged against beyond reasonable doubt.*" (See **_Exhibit-2_** at 100).[3]

USDOJ argued before Third Circuit that Petitioner is removable as charged under *INA § 237(a)(2)(E)(i)*, because shorthand statute description in criminal docket, (See **_Exhibit-1_**) and order of sentence, (See **_Exhibit-3_**), lists *18 Pa. C.S.A. § 2709.1(a)(1)* Stalking – Repeatedly Commit Acts To Cause Fear – (M1), reference to "causing fear" indicated that Petitioner's conviction involves an "intent to place another person in reasonable fear of bodily injury" as opposed to an intent to "cause emotional distress to such other person"; and Petitioner's arguments regarding divisibility of *18 Pa. C.S.A. § 2709.1* into subsections *§ 2709.1(a)(1)* and *§ 2709.1(a)(2)* is irrelevant. Additionally, argued that Pennsylvania case law and model jury instructions indicate that *mens rea* element of *18 Pa. C.S.A. § 2709.1* is divisible and necessitates the application of the modified categorical approach to determine *mens rea* element involved in Petitioner's conviction.

---

[3] THE COURT:     Mr. Vurimindi, I find you guilty hof four charges that the Commonwealth has charged against beyond reasonable doubt. I don't remember what the bail situation is, but the bail is revoked. We are going to order a mental health evaluation. Order PSI. What else can we order? I want to make sure I have a full.

Mr. ROUSE:     I believe that it. In addition to that, I have reports I can get you, backdated reports.

THE COURT:     Fair enough.

MR. ROUSE:     No disorderly conduct, I agree to that.
(See **_Exhibit-2_** at 100).

USDOJ argument is misplaced both in fact and law, because referencing to "causing fear" in shorthand statute description - "Stalking – Repeatedly Commit Acts To Cause Fear – (M1)", referring to the now deleted third element of subjective consequences of defendant's actions. Moreover, if referencing to "causing fear" in shorthand statute description imply that Petitioner's conviction involves an "intent to place another person in reasonable fear of bodily injury", then there is no need for Commonwealth to charge Petitioner on 08-17-2012 in Count 1 and 2: Stalking – Repeatedly Commit Acts To Cause Fear – (M1), with either intent to place such other person in **reasonable fear of bodily injury** or **to cause substantial emotional distress** to such other person." (See **_Exhibit-1_**). Moreover, imposition of immigration consequences upon a predicate conviction, requires a focus on _18 Pa. C.S.A. § 2709.1_ elements and not upon shorthand statute description.[4]

---

[4] In Count 3: Disorderly Conduct Hazardous/Physi Off - (M3) under _18 Pa. C.S.A. § 5503(a)(4)_, Commonwealth charged Petitioner that he, "With intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof, created a hazardous or psychically offensive condition by an act which served no legitimate purpose of the actor, and the intent of the actor was to cause substantial, harm or serious inconvenience or the actor persisted in disorderly conduct after reasonable warning or request to desists." (See **_Exhibit-1_**). The "hazardous or psychically offensive condition" in shorthand statute description referring to consequence of defendant's actions. Therefore, Count 1, 2 and 3 shorthand statute descriptions don't refer to the _mentes reae_ requirement of Stalking and Disorderly Conduct.

In *Matter of Sanchez-Lopez,* 26 I. & N. Dec. 71 (BIA 2012), BIA set forth the elements of stalking which are necessary for the crime to come within *INA § 237(a)(2)(E)(i):* (1) conduct that was engaged in on more than a single occasion; (2) conduct which was directed at a specific individual; and (3) conduct which ***intended to cause the victim to be placed in fear of bodily injury or death.*** ***Id.*** at 74.

Pennsylvania's stalking statute, *18 Pa.C.S.A. § 2709.1(a)* states that: A person commits the crime of stalking when the person either: (1) engages in a course of conduct [5] or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an ***intent to place such other person in reasonable fear of bodily injury*** [6] ***or to cause substantial emotional distress*** [7] ***to such other person;*** or (2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or

---

[5] *18 Pa.C.S.A. § 2709.1(f)* define "Course of conduct" as "A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously".

[6] *18 Pa.C.S.A. § 2301* define the term "Bodily injury" as Impairment of physical condition or substantial pain.

[7] *18 Pa.C.S.A. § 2709.1(f)* define "Emotional distress" as "A temporary or permanent state of mental anguish".

communicate either an ***intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person***.

A simple comparison of <u>mentes *reae*</u> element of "crime of stalking" outlined in <u>*Matter of Sanchez-Lopez*</u>, Supra with <u>mentes *reae*</u> element of <u>*18 Pa.C.S.A. § 2709.1*</u>, it is plainly evident that <u>mentes *reae*</u> element **intent *to be placed in fear of bodily injury or death*** of "crime of stalking" outlined in <u>*Matter of Sanchez-Lopez*</u>, Supra, only partially overlaps with first means of <u>mentes *reae*</u> element of <u>*§ 2709.1(a)(1)-(2)*</u> – **intent *to place such other person in reasonable fear of bodily injury***, and left-out the "course of conduct" that committed with second means of <u>mentes *reae*</u> element of <u>*§ 2709.1(a)(1)-(2)*</u> – **intent *to cause substantial emotional distress***.

US Supreme Court has long held that imposition of immigration consequences upon a predicate conviction, "mandate a formal categorical approach." <u>*Taylor v. United States*</u>, 495 U.S. 575 (1990). This approach requires IJ "to look only to the fact of conviction and the statutory definition of the prior offense"-"not to the particular facts underlying that conviction." ***<u>Id.</u>*** at 600, 602. Under this categorical approach, IJ requires not only to ignore the actual manner in which Petitioner committed the "crime of stalking", but also to presume that Petitioner did so by engaging in no more than the minimum conduct criminalized by the <u>*18 Pa.C.S.A. § 2709.1(a)(1)*</u> or <u>*18 Pa.C.S.A. § 2709.1(a)(2)*</u>. See <u>*Moncrieffe v. Holder*</u>, 569 U.S. 184 (2013) (requiring courts to assume the

conviction rested on the "minimum conduct criminalized by the state statute". *Moncrieffe*, 569 U.S. at 191). See *Mathis v. United States*, 136 S. Ct. 2243 (2016) (explaining that the categorical approach "treats such facts as irrelevant". *Mathis*, 136 S. Ct. at 2253). Moreover, "an elements-focus avoids unfairness to defendants." *Mathis*, 136 S. Ct. at 2253. "Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary, which means "at trial, and still more at plea hearings, a defendant may have no incentive to contest" them. *Id.* These types of factual inaccuracies "should not come back to haunt the defendant many years down the road by triggering a lengthy mandatory sentence." *Id.* (or deportation in this case).

To frame properly the issue in this case requires preliminary recognition of an important point, that US Supreme Court has long held that any predicate crime listed in *INA* refers to the "generic" version of the crime-"*i.e.*, the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276 (2013). The IJ applying the categorical approach is limited to "comparing the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime." *Id.* The "prior conviction qualifies as an *INA* predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.* In a typical case, then, an IJ performing a categorical-approach analysis "cannot go beyond identifying the crime of conviction" and reviewing the statutory definition. *Mathis*, 136 S. Ct. at 2252. But there is an exception. "In a narrow range of cases," the "categorical approach may permit the sentencing

court to go beyond the mere fact of conviction" and the statutory text, *Taylor*, 495 U.S. at 602, and also consult the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," *Shepard v. United States*, 544 U.S. 13 (2005). This limited universe of court records, which has been extended to include jury instructions, *see Descamps*, 133 S. Ct. at 2281, has been termed "*Shepard* documents." The purpose of this "modified" approach, and its accompanying license to review any available *Shepard* documents, is to provide IJ with a tool to determine reliably not what specific conduct was the basis for a particular crime as a factual matter, but rather what type of conduct is generally represented by an underlying conviction as a legal matter. But because the modified approach is accordingly intended only to "serve the limited function" of "helping effectuate the categorical analysis," ***Id.***, it retains the categorical approach's single purpose: to figure out the precise elements of the crime of conviction. *Shepard*, 544 U.S. at 26.[8]

In line with that limited function, the modified approach also has limited applicability: an IJ may use it only if the underlying conviction was under a so-called "divisible" statute. Descamps, 133 S. Ct. at 2281-82. A divisible statute

---

[8] Ultimately, however, while the categorical approach and its modified variant involve many moving parts, they retain one overarching purpose: giving an IJ a way to "satisfy *Taylor's* demand for certainty" as to this underlying question: "What crime, with what elements," was the defendant convicted of? ***Id.*** at 2249, 2257 (citation omitted).

"sets out one or more elements of the offense in the alternative," _**Id.**_ at 2281, and in the "typical case brought under the statute, the prosecutor charges one of those alternatives, and the judge instructs the jury accordingly," _**Id.**_ at 2284. See _Mathis_, 136 S. Ct. at 2249. The IJ accomplishes this by reviewing the _Shepard_ documents, to "determine what crime, with what elements, the defendant was convicted of." _**Id.**_ Stated differently, the question is whether the court can isolate the conviction to qualifying elements of "crime of stalking" alone, to the exclusion of lesser, non-qualifying conduct. The modified approach thus only has any possible application to "alternatively phrased statutes." _**Id.**_ at 2256. So, when an IJ is faced with alternative wording in a statute, before going beyond the law's text and turning to _Shepard_ documents to glean more information about the nature of a conviction, the IJ must first decide whether the statute is, in fact, divisible. That analysis, in turn, depends on whether the statute's components ("listed items," per _Mathis_) "are elements or means." _**Id.**_ Elements are prerequisites to a conviction; means, by contrast, are not essential, but merely represent ways in which a statute might be violated. If a statute's components merely describe different means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." _**Id.**_ A conviction under such a statute thus cannot be analyzed using the modified approach and-assuming the statute criminalizes conduct outside _INA_'s reach-the conviction may not be used to impose immigration consequences. _**Id.**_ Only if a statute's components are elements may a court review any available

*Shepard* documents to try to isolate which alternative element formed the basis for the conviction. ***Id.***

In determining whether listed items are elements or means, the Supreme Court has authorized four possible approaches, the last of which is permissible only if the first three fail to yield an answer. *See **Id.*** at 2256-57. First, a "state court decision may definitively answer the question." ***Id.*** at 2256. In *Mathis*, for example, the Iowa Supreme Court had expressly held that the Iowa burglary statute at issue listed "alternative methods"-not elements-rendering the modified approach impermissible and disqualifying any conviction under the statute from ACCA consideration. Second, "the statute on its face may resolve the issue." ***Id.*** If, for example, the statute provides different penalties for violations of its different alternatives, it is considered to list elements; if instead it is "drafted to offer illustrative examples", it lists means. ***Id.*** Third, the "statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." ***Id.*** Finally, [9] if none of those provides a "clear answer,"

---

[9] A determination of a statute's divisibility turns on the distinction between "means" and "elements." Elements are the constituent parts of a criminal offense that a jury must find beyond a reasonable doubt to convict; or, alternatively, that a defendant necessarily admits when pleading guilty. *Mathis*, 136 S. Ct. at 2248, 2256; *see Descamps*, 570 U.S. at 261-62. Means, on the other hand, are merely the factual ways that a criminal offense can be committed; they are "extraneous to the crime's legal requirements" and thus "need neither be found by a jury nor admitted by a defendant." *Mathis*, 136 S. Ct. at 2248 A divisible statute sets out one or more *elements* in the alternative, most often using disjunctive language to

the court may conduct a limited review of the *Shepard* documents-which the Court has described as a "peek"-"for the sole and limited purpose of determining whether the listed items are elements of the offense." ***Id.*** at 2256-57.[10]

Under <u>Mathis</u> divisibility framework's first method, Pennsylvania state courts didn't decide the divisibility of *18 Pa.C.S.A. § 2709.1(a)(1)-(2)*. If the state courts are silent as to the divisibility of the statute, this Court should consider whether the statute on its face resolves the issue. *Mathis*, 136 S. Ct. at 2256. A statute is "divisible", when it "comprises multiple, alternative versions of the crime". *Descamps* at 2281. Here, subsection *2709.1(a)(1)*, can be violated by one "***repeatedly commits acts***", and subsection *2709.1(a)(2)* can be violated by one who, "***repeatedly communicates***", creates two alternative "means" in which

---

list multiple, alternative criminal offenses. *Descamps*, 570 U.S. at 262. Each alternative offense listed in a divisible statute must be proven beyond a reasonable doubt to sustain a conviction. An indivisible statute, by comparison, sets forth a single set of elements that define a single crime, regardless of whether the statute lists separate factual *means* of satisfying a particular element. *Mathis*, 136 S. Ct. at 2248-49. The modified categorical approach applies only to divisible statutes.

[10] As to this fourth approach, the Court illustrated with an example: Suppose an indictment and correlative jury instructions charge a defendant with burgling a "building, structure or vehicle". That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. ***Id.*** at 2257. But if those documents, by contrast, "reference one alternative term to the exclusion of all others, the statute contains a list of elements." ***Id.***

"crime of stalking" is committed and not divisible, because both versions are graded and punished exactly same. See _United States v. Thorn_, 282 F.Supp.3d 886 (EDPA 2017)(Under _Mathis_, Pennsylvania Robbery Statute (_18 Pa.C.S.A. § 3701(a)(1)(i)-(iii)_) is indivisible: because they are all defined as felonies in the first degree and enumerate different "means" committing robbery). Even, if this Court consider subsections _2709.1(a)(1)_ and _2709.1(a)(2)_ are two alternative versions of "crime of stalking" and therefore divisible, _18 Pa.C.S.A. § 2709.1(a) (1)-(2)_ is still indivisible in this case because, February 07, 2014 Notes of Testimony, (See **_Exhibit-2_** at 1-5), establish that Commonwealth prosecuted Petitioner under all (two) subsections (_2709.1(a)(1)_ and _2709.1(a)(2)_) of _18 Pa.C.S.A. § 2709.1_, and Pennsylvania Court applied all (two) subsections against Petitioner, and therefore _18 Pa.C.S.A. § 2709.1(a)(1)-(2)_ isn't divisible in this case. See _United States v. Singleton_, 252 F.Supp.3d 423 (EDPA 2017) (Pennsylvania Robbery Statute (_18 Pa.C.S.A. § 3701(a)(1)(i)-(iii)_) is indivisible, where defendant is charged under all three subsections of the statute, which is the manner in which Pennsylvania courts and prosecutors applied, then the statute isn't divisible).

Regarding, divisibility of single element of mentes _reae_ requirement of _§ 2709.1(a)(1)-(2)_ – **intent _to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress_**, Pennsylvania court decisions definitively resolves the issue of mentes _reae_ requirement as alternate "means", instead of alternate elements in which _§ 2709.1(a)(1)-(2)_ might be

violated, because Pennsylvania Courts commonly instruct juries on the different subsections of *2709.1(a)(1)* or *2709.1(a)(2)*, with either <u>mentes reae</u> requirement - intent **to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress** and Pennsylvania case law supports the view that *18 Pa.C.S.A. § 2709.1(a)(1)-(2)* <u>mentes *reae*</u> requirement of is indivisible. See *Commonwealth v. Vurimindi*, 200 A.3d 1031 (Pa.Super.2018) (applying subsections *2709.1(a)(1)* and *2709.1(a)(2)*, with either <u>mentes reae</u> requirement);[11] *Commonwealth v. Abed*, 989 A.2d 23 (Pa.Super.2010) (same); *Commonwealth v. Leach*, 729 A.2d 608 (Pa.Super.1999)(applying former subsection *2709(b)* (encompassing current subsections of *2709.1(a)(1)* and *2709.1(a)(2)*), with either <u>mentes reae</u> requirement); *Commonwealth v. Urrutia*, 653 A.2d 706 (Pa.Super.1995)(same). Moreover, in *United States v. Gonzalez*, 905 F.3d 165 (3d Cir.2018)(quoting, *United States v. Yeaman*, 194 F.3d 442, n.6 (3d Cir.1999); *United States v. Edmonds*, 80 F.3d 810 (3d Cir.1996); *United States v. Shrader*, 675 F.3d 300 (4th Cir.2012);[12] *United States v. Osinger*, 753

---

[11] In order to show that a statute creates a crime outside the categorical definition, a party must show "a realistic probability, not a theoretical possibility, that the State would apply its statute" to the nongeneric conduct. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183 (2007). To do this, the party "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues". *Duenas-Alvarez*, 549 U.S. at 193.

[12] Fourth Circuit, has declined to parse the different <u>mentes reae</u> of federal Stalking Statute and observed that "it is an element of the crime that the defendant have intended harm to a particular victim".

F.3d 939 (9th Cir.2014)[13]), this Court held that the <u>mentes reae</u> requirement in federal Stalking Statute, "***intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress***", constitutes alternate "means" as opposed to alternate elements of the offense, for which defendant has no right to insist on a jury instruction requiring unanimous agreement on the "means" by which <u>mens rea</u> element is satisfied. *Gonzalez*, 905 F.3d at 183-87.

    <u>Mathis's</u> second and third methods, as each requires a close look at the Stalking statute *18 Pa.C.S.A. § 2709.1* itself. Under <u>Mathis's</u> second way, checking whether the statute "on its face" provides answers, offers that a conviction under subsections *2709.1(a)(1)* or *2709.1(a)(2)*, with either mens rea requirement - intent **to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress,** constitutes the same grade of stalking of first degree misdemeanor. See *Hillocks v. Att'y Gen*., 934 F.3d 332 (3d Cir. 2019)(this Court held that the statutory provision of the same punishment, regardless of which alternative was involved in a crime, could indicate that the alternatives are means).

    Under <u>Mathis's</u> third way to determine divisibility-figuring out "which things must be charged under the statute, and which need not be" - is useful. Charging

---

[13] Ninth Circuit has also treated the <u>mentes reae</u> requirement of federal Stalking Statute as a single element in conducting its analysis of the statute.

documents shows that Commonwealth charged Petitioner under subsection *2709.1(a)(1)*, with either <u>mentes reae</u> requirement - intent **to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress**, (See ***Exhibit-1***), and February 07, 2014 Notes of Testimony shows that Commonwealth prosecuted Petitioner under subsections *2709.1(a)(1)-(2)*, with either <u>mentes reae</u> requirement. (See ***Exhibit-2*** at 1-5). Moreover, Pennsylvania Courts commonly instruct juries on the different subsections of *2709.1(a)(1)* or *2709.1(a)(2)*, with either <u>mentes reae</u> requirement - intent **to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress**. See *Commonwealth v. Davis*, 737 A.2d 792 (Pa.Super.1998) (applying former subsection *2709(b)* (encompassing current subsections of *2709.1(a)(1)* and *2709.1(a)(2)*), with either <u>mentes reae</u> requirement); *Commonwealth v. D'collanfield*, 805 A.2d 1244 (Pa.Super.2002) (applying *18 Pa.C.S.A. § 5504(a.1)* Stalking by communication or address, virtually identical to *18 Pa.C.S.A. § 2709(b)*, with either <u>mentes reae</u> requirement).

Under <u>Mathis's</u> fourth and last way of residual technique-a "peek" at the *Shepard* documents for "the sole and limited purpose of determining whether Commonwealth prosecuted Petitioner under subsections *2709.1(a)(1)-(2)* with either <u>mentes reae</u> requirement - **intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress** as different elements of the offense". As discussed above, even fourth

method leads to the same conclusion, because February 07, 2014 Notes of Testimony shows that Commonwealth prosecuted Petitioner under subsections *2709.1(a)(1)-(2)* with either <u>mentes reae</u> requirement - **intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress**. (See ***Exhibit-2*** at 1-5). Additionally, the language of *18 Pa. C.S.A. § 2709.1* does not indicate that a **jury must unanimously agree on the particular mens rea requirement**. Much like the hypothetical statute described in *Mathis v. United States*, 136 S. Ct. 2243 (2016), which allowed jurors to disagree over the exact weapon used as long as all agree that the defendant used a "deadly weapon," 136 S. Ct. at 2249, *18 Pa. C.S.A. § 2709.1* appears to allow some jurors to conclude that defendant acted with intent to **cause reasonable fear of bodily injury** in a particular instance, while others may believe that defendant acted with intent to **cause substantial emotional distress**. As long as they could agree that a defendant acted with either one intent, the jury may determine that the defendant is guilty of stalking. Therefore, mentes reae requirement in *18 Pa. C.S.A. § 2709.1*, with intent to place such other person in **reasonable fear of bodily injury** or **to cause substantial emotional distress** - is indivisible and modified categorical approach is impermissible. See *Hillocks v. Att'y Gen*., 934 F.3d at 339 (citing, *United States v. Brown*, 765 F.3d 185 (3d Cir. 2014) (quoting *Descamps v. United States*, 570 U.S. 254 (2013)(The modified approach only applies when (1) the statute of conviction has alternative elements, and (2) "at least one" of the alternative divisible categories would, by

its elements, be a match with a generic federal crime). Accordingly, in Pennsylvania it is real that *18 Pa.C.S.A. § 2709.1(a) and (2)* will be applied to the conduct falling outside the definition of a "crime of stalking" outlined in *Matter of Sanchez-Lopez*, 26 I&N Dec. 71 (BIA 2012). See *Salmoran v. Att'y Gen.,* 909 F.3d 73 (3d Cir. 2018)(quoting, *United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) ("Where, as here, a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime." (citation omitted)). Therefore, in Pennsylvania it is real that *18 Pa.C.S.A. § 2709.1(a)(1)* and *18 Pa.C.S.A. § 2709.1(a)(2)* will be applied to the conduct falling outside the definition of a "crime of stalking" outlined in *Matter of Sanchez-Lopez*, 26 I&N Dec. 71 (BIA 2012), and ***intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress*** is indivisible relative to the definition of a "crime of stalking" in *INA § 237(a)(2)(E)(i)*. Wherefore, Petitioner's conviction under *18 Pa.C.S.A. § 2709.1* is not a "crime of stalking" under *INA § 237(a)(2) (E)(i)*. Accordingly, IJ made an error in comparing elements of an indivisible *18 Pa.C.S.A. § 2709.1* with the elements of "crime of stalking" under *INA § 237(a) (2)(E)(i)* as defined by BIA in *Matter of Sanchez-Lopez*, Supra, by treating indivisible single element of <u>mentes *reae*</u> requirement of *§ 2709.1(a)(1)-(2)* – intent ***to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress*** as alternate elements of *§ 2709.1(a)*

*(1)-(2)* instead of alternate "means" in which *18 Pa.C.S.A. § 2709.1(a)(1)-(2)* might be violated. Moreover, an inconclusive conviction based upon either intent to place such other person in **reasonable fear of bodily injury** or **to cause substantial emotional distress** doesn't support removability. See *Valansi v. Att'y Gen.*, 278 F.3d 203 (3d Cir. 2002)(inconclusive conviction record doesn't support removability).

Vamsidhar Vuriminde
A# 098-689-766
Montgomery Processing Center
806 Hilbig Road,
Conroe TX-77301

Legal Mail

United States Courts
Southern District of Texas
FILED

SEP 29 2020

David J. Bradley, Clerk of Court

To
Office of the Clerk,
United States District Court for Southern D
515 Rusk Street, Room # 5300,
P.O. Box # 61010,
Houston, TX-77002-2600

This Is Legal Mail And
Has NOT Been Inspected